## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB CORMAN, in his official capacity as Majority Leader of the Pennsylvania Senate, MICHAEL FOLMER, in his official capacity as Chairman of the Pennsylvania Senate State Government Committee, LOU BARLETTA, RYAN COSTELLO, MIKE KELLY, TOM MARINO, SCOTT PERRY, KEITH ROTHFUS, LLOYD SMUCKER, and GLENN THOMPSON, <br><br>         Plaintiffs, <br><br>    v. <br><br> ROBERT TORRES, in his official capacity as Acting Secretary of the Commonwealth, and JONATHAN M. MARKS, in his official capacity as Commissioner of the Bureau of Commissions, Elections, and Legislation, <br><br>         Defendants, <br><br>    and <br><br> LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA; CARMEN FEBO SAN MIGUEL; JAMES SOLOMON; JOHN GREINER; JOHN CAPOWSKI; GRETCHEN BRANDT; THOMAS RENTSCHLER; MARY ELIZABETH LAWN; LISA ISAACS; DON LANCASTER; JORDI COMAS; ROBERT SMITH; WILLIAM MARX; RICHARD MANTELL; PRISCILLA MCNULTY; THOMAS ULRICH; ROBERT MCKINSTRY; MARK LICHTY; and LORRAINE PETROSKY, <br><br>         (Proposed) Intervenor-Defendants. | **FILED** <br> HARRISBURG, PA <br><br> FEB. 22 2018 <br><br> PER_____ <br> DEPUTY CLERK <br><br><br> Civil Action No. 1:18-cv-00443 <br><br> Chief Judge Connor <br><br> ELECTRONICALLY FILED |

## BRIEF IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................... 3

QUESTIONS PRESENTED ............................................................................... 9

ARGUMENT ..................................................................................................... 9

I.     Proposed Intervenors Are Entitled To Intervene as of Right ........................ 10

      A.    This Motion To Intervene Is Timely ..................................................... 10

      B.    Proposed Intervenors' Interest in this Action Is Overwhelming ........ 11

      C.    This Action Directly Threatens Proposed Intervenors' Interests ........ 11

      D.    Proposed Intervenors' Interests Are Not Adequately Represented .... 13

II.    Alternatively, the Court Should Grant Permissive Intervention ................... 15

CONCLUSION ................................................................................................. 17

CERTIFICATE OF COMPLIANCE WITH WORD LIMIT ................................ 199

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Farm Bureau Fed'n v. U.S. EPA,*
  278 F.R.D. 98 (M.D. Pa. 2011) .......................................................................15

*Am. Intl' Surplus Lines Ins. Co. v. IES Lead Paint Division, Inc.,*
  No. CIV. A. 94-4627, 1995 WL 49295 (E.D. Pa. Feb. 2, 1995).......................12

*Benjamin ex rel Yock v. Dep't of Pub. Welfare of Pa.,*
  701 F.3d 938 (3d Cir. 2012) ..................................................................10, 11, 14

*Branch v. Smith,*
  538 U.S. 254 (2003)...............................................................................................2

*Brody By & Through Sugzdinis v. Spang,*
  957 F.2d 1108 (3d Cir. 1992) ...............................................................................2

*Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.,*
  138 F. Supp. 2d 593 (M.D. Pa. 2001)..................................................................16

*Georgia v. Ashcroft,*
  539 U.S. 461 (2003)...............................................................................................9

*Georgia v. Holder,*
  No. 1:10-cv-1062, ECF No. 30 (D.D.C. Aug. 3, 2010) .......................................9

*Griffin v. Burns,*
  570 F.2d 1065 (1st Cir. 1978)..............................................................................14

*Growe v. Emison,*
  507 U.S. 25 (1993)..................................................................................................2

*Johnson v. Mortham,*
  915 F. Supp. 1529 (N.D. Fla. 1995) ...................................................................16

*Kleisser v. U.S. Forest Service,*
  157 F.3d 963 (3d Cir. 1998) .........................................................................11, 13

*McCann v. League of Women Voters of Pa.,*
  No. 17A802 (U.S.)..................................................................................................6

*NRDC v. Costle,*
  561 F.2d 904 (D.C. Cir. 1977)..............................................................................15

*N.Y. Pub. I.R.G. v. Regents,*
  516 F.2d 350 (2d Cir. 1975) ...............................................................................15

*Reynolds v. Sims,*
  377 U.S. 533 (1964)............................................................................................14

*Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers,*
  101 F.3d 503 (7th Cir. 1996) ..............................................................................14

*Texas v. United States,*
  No. 1:11-cv-1303, ECF No. 11 (D.D.C. Aug. 16, 2011) .....................................9

*Trbovich v. United Mine Workers,*
  404 U.S. 528 (1972)............................................................................................14

*Turzai v. League of Women Voters of Pa.,*
  No. 17A795 (U.S.)..................................................................................................6

*Wright v. City of Albany,*
  306 F. Supp. 2d 1228 (M.D. Ga. 2003) ................................................................9

**Statutes and Rules**

42 Pa. Cons. Stat. § 726 ...........................................................................................4

Fed. R. Civ. P. 24 ..................................................................................................1, 3

Fed. R. Civ. P. 24(a)...........................................................................................9, 16

Fed. R. Civ. P. 24(a)(2).........................................................................................10

Fed. R. Civ. P. 24(b) .....................................................................................9, 15, 16

Fed. R. Civ. P. 24(b)(2).........................................................................................15

Fed. R. Civ. P. 24(b)(3).........................................................................................15

Proposed Intervenors, who are the plaintiffs in the state court action challenged in this federal lawsuit, respectfully submit this brief in support of their motion to intervene as defendants under Federal Rule of Civil Procedure 24.[1]

## INTRODUCTION

On January 22, 2018, the Pennsylvania Supreme Court struck down Pennsylvania's 2011 congressional map on the "sole basis" that the map violates the Pennsylvania Constitution, and ordered a remedial map for the 2018 elections. The state high court gave the General Assembly and the Governor nearly a month to enact a new map, and in case they failed to do so, the court retained a nationally renowned redistricting expert (Dr. Nathaniel Persily) to assist the court in adopting a remedial map. The lead defendants in the state court action, Pennsylvania House Speaker Michael Turzai and Senate President Pro Tempore Joseph Scarnati, asked the U.S. Supreme Court to stay the Pennsylvania Supreme Court's judgment and remedial process. They raised *identical* arguments under the Elections Clause that are now raised in this new federal lawsuit. But Justice Alito denied their stay application without even referring it to the full court. For good reason: It is

---

[1] Proposed Intervenor are the League of Women Voters of Pennsylvania and individual Pennsylvania voters Carmen Febo San Miguel, James Solomon, John Greiner, John Capowski, Gretchen Brandt, Thomas Rentschler, Mary Elizabeth Lawn, Lisa Isaacs, Don Lancaster, Jordi Comas, Robert Smith, William Marx, Richard Mantell, Priscilla McNulty, Thomas Ulrich, Robert McKinstry, Mark Lichty, and Lorraine Petrosky.

hornbook law that federal courts cannot review decisions of state courts construing state law, and Speaker Turzai and Senator Scarnati's theory that state courts lack power to adopt remedial congressional maps is squarely foreclosed by multiple U.S. Supreme Court precedents. *See, e.g.*, *Growe v. Emison*, 507 U.S. 25, 42 (1993) (upholding state courts' authority "to redraw … federal congressional districts"); *Branch v. Smith*, 538 U.S. 254, 270-74 (2003) (similar).

The General Assembly did not pass a remedial map, or even try, instead leaving the task to the Pennsylvania Supreme Court. On February 19, 2018, the state high court, with the assistance of Dr. Persily, adopted a remedial map. The remedial map strictly adheres to traditional districting criteria, and independent analyses confirm that the map exhibits no signs of partisan bias. If anything, standard statistical methods show that the map slightly favors Republicans.

But none of that mattered to Speaker Turzai and Senator Scarnati. Even before the Pennsylvania Supreme Court issued the remedial map, they publicly announced plans to challenge the map in federal court, eventually settling on a two-pronged assault. First, just last evening, Speaker Turzai and Senator Scarnati filed a new emergency application asking the U.S. Supreme Court to stay the state high court's remedial map, again raising the same Election Clause arguments. Second, deputies of Senator Scarnati, along with several members of Congress

who filed an amicus brief in the U.S. Supreme Court, have now filed this new federal action seeking the same emergency relief to stay the remedial map.

If allowed to intervene, Proposed Intervenors will show that this action is squarely foreclosed by multiple jurisdictional and procedural bars, and Plaintiffs' claims in any event are frivolous on the merits. Intervention should be granted. As plaintiffs in the underlying state court action, Proposed Intervenors have an overwhelming interest in defending the Pennsylvania Supreme Court's final judgment and remedy. At trial, they were the only parties to present evidence of the 2011 map's invalidity and the necessary qualities of a map that would comply with the Pennsylvania Constitution. Their interests are distinct from those of the Pennsylvania election officials named as defendants in this case. Those officials were *defendants* in the state court action, and, unlike Proposed Intervenors, they presented no witnesses or evidence at trial. As Pennsylvania voters with distinct interests who secured the underlying state court, state law judgment, Proposed Intervenors satisfy all the requirements for intervention under Rule 24.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On June 15, 2017, Proposed Intervenors filed suit in Pennsylvania Commonwealth Court challenging Pennsylvania's 2011 congressional districting map exclusively under the Pennsylvania Constitution, including its Free and Equal Elections Clause. 06/15/17 Pet. for Review, goo.gl/ndfs2e. Their complaint

3

named as defendants, among others, Speaker Turzai and Senator Scarnati as well as the Pennsylvania election officials named as defendants in this action.

On November 9, 2017, the Pennsylvania Supreme Court exercised its "extraordinary jurisdiction" under 42 Pa. Cons. Stat. § 726, and ordered the Commonwealth Court to hold a trial and issue recommended findings of fact and conclusions of law by December 31, 2017. During a five-day trial in December 2017, Proposed Intervenors presented extensive affirmative evidence of the 2011 map's unconstitutionality, including testimony of four expert witnesses. Thereafter, Judge Brobson of the Commonwealth Court found "intentional discrimination," *i.e.*, that "the 2011 Plan was drawn through a process in which a particular partisan goal—the creation of 13 Republican districts—predominated." 12/29/17 Findings of Fact act and Conclusions of Law §§ II, ¶ 291, III, ¶¶ 51 (attached as Ex. A). The Commonwealth Court, however, recommended upholding the map as a matter of law.

On January 22, 2018, after extensive briefing and oral argument, the Pennsylvania Supreme Court struck down the 2011 map on the "sole basis" that it "clearly, plainly and palpably violate[d] the Constitution of the Commonwealth of Pennsylvania." 01/22/18 Order at 2 (attached as Ex. B). The state court's January 22 order also set forth a remedial process. The court gave the General Assembly nearly three weeks to submit a remedial map to the Governor—the length of time

Speaker Turzai and Senator Scarnati's counsel requested at oral argument—and another week for the Governor to consider any such submission. If the General Assembly and Governor failed to agree on a valid map, the Pennsylvania Supreme Court, like many other state courts in analogous circumstances, stated that it would "proceed expeditiously to adopt a plan." *Id.* The court appointed Dr. Nathaniel Persily of Stanford University, a non-partisan expert who has developed remedial districting plans in numerous cases around the country, to assist in developing a remedial plan if necessary. 01/26/18 Order at 2 (attached as Ex. C).

The Pennsylvania Supreme Court's January 22 order set the criteria for any remedial map. It had to "consist of: congressional districts composed of compact and contiguous territory; as nearly equal in population as practicable; and which do not divide any county, city, incorporated town, borough, township, or ward, except where necessary to ensure equality of population." 01/22/18 Order at 3.

On January 26, 2018, Speaker Turzai and Senator Scarnati, as well as a group of intervenors in the state court case who are Republican voters and congressional candidates, filed emergency applications asking the U.S. Supreme Court to stay the state high court's judgment and remedial process.[2] Both applications argued that the Pennsylvania Supreme Court exceeded its authority

---

[2] *See Turzai v. League of Women Voters of Pa.*, No. 17A795, goo.gl/sGnHhA; *McCann v. League of Women Voters of Pa.*, No. 17A802, goo.gl/wbruXq.

under the Election Clause, and that a stay was needed to prevent purported chaos
and confusion from imposing a new map so close to the election. *Turzai v. League
of Women Voters of Pa.*, No. 17A795 (U.S.) (attached as Ex. F); *McCann v.
League of Women Voters of Pa.*, No. 17A802 (U.S.). On February 5, 2018, Justice
Alito denied the stay applications without even referring them to the full court.

The General Assembly did nothing to pass a new map—even though it had
passed the prior map in only 10 days in 2011 from first introduction of the
proposed districts to final passage. It held no hearings or debates. No draft maps
were introduced. Instead, Senator Scarnati sent an angry letter to the Pennsylvania
Supreme Court refusing to comply with the court's order to provide certain data.
*See* Ltr. from B. Paszamant to Pa. Supreme Court, Jan. 31, 2018, goo.gl/tPsSaa.
Another member of the General Assembly proposed impeaching all five of the
state high court justices who found the 2011 map unconstitutional. *See* Memo.
from Rep. Cris Dush to All House members re: Impeachment of five PA Supreme
Court Justices, Feb. 5, 2018, goo.gl/NDvaE2.

On February 7, 2018 the Pennsylvania Supreme Court issued its opinion
explaining that the 2011 map violated the Pennsylvania Constitution's Free and
Equal Elections Clause. The court held that when the "neutral criteria" of equal
population, contiguity, compactness, and avoiding splitting political subdivisions
"have been subordinated, in whole or in part, to extraneous considerations such as

gerrymandering for unfair partisan political advantage, a congressional

redistricting plan violates" that Clause. 02/07/18 Op. 123 (attached as Ex. D). The

court also rejected Speaker Turzai's and Senator Scaranti's argument that the court

lacked authority to review and remedy a congressional map under the federal

Election Clause. *Id.* at 137 n.79.

Rather than try to pass a map in the General Assembly, Speaker Turzai and

Senator Scarnati alone submitted a remedial map to the Governor on February 9.

But their proposed map was an egregious gerrymander, and the Governor rejected

it.[3] They then submitted the same proposed map to the Pennsylvania Supreme

Court. On February 15, the other parties in the case and several amici curiae

submitted their own proposed maps to the state high court.

On February 19, the Pennsylvania Supreme Court adopted a remedial map

(the "Remedial Plan"). The court explained that "[t]he Remedial Plan is based

upon the record developed in the Commonwealth Court, and it draws heavily upon

the submissions provided by the parties, intervenors, and amici." Op. & Order at 6

(attached as Ex. E). As the court further explained, the Remedial Plan strictly

adheres to all of the districting criteria set forth in the court's January 22 order. *Id.*

---

[3] 02/15/18 Petrs.' Br. in Supp. of Proposed Remedial Plans at 12-15,
goo.gl/uQyNk8; *see also* C. Ingraham, *Pennsylvania Republicans have drawn a
new congressional map that is just as gerrymandered as the old one*, Wash. Post,
Feb. 11, 2018, goo.gl/KMmywE.

It splits only 13 counties, compared to 27 under the 2011 map. *Id.* It splits only 19 municipalities, compared to 68 under the 2011 map.[4] And the Remedial Plan is far more compact than the 2011 map under every single measure of compactness.

Empirical analysis of the Remedial Plan confirms that it exhibits no partisan bias in favor of either party. If anything, it slightly favors Republicans, likely due to the small natural advantage that Republicans hold due to clustering of Democratic voters in large cities. Under the Remedial Plan, 10 districts had more votes for Donald Trump in the 2016 presidential election, while 8 had more votes for Hillary Clinton. In other words, using 2016 presidential elections results, the Remedial Plan is a 10-8 map in Republicans' favor. The objective metrics that redistricting scholars most commonly use to evaluate districting plans—the "mean-median gap" and "efficiency gap"—similarly produce results slightly in Republicans' favor.[5] In addition, of central importance to this intervention motion, Proposed Intervenors' experts have evaluated the Remedial Plan using the same statistical techniques they employed in the state court action, and those techniques

---

[4] *See* http://www.pacourts.us/news-and-statistics/cases-of-public-interest/league-of-women-voters-et-al-v-the-commonwealth-of-pennsylvania-et-al-159-mm-2017 (click on "Remedial Plan Reports").

[5] PlanScore, *Pennsylvania U.S. House plan*, https://planscore.org/plan.html?20180219T202039.596761160Z; *see also* Aaron Bycoffe, *Pennsylvania's New Map Helps Democrats. But It's Not A Democratic Gerrymander*, FiveThirtyEight, https://fivethirtyeight.com/features/pennsylvanias-new-map-helps-democrats-but-its-not-a-democratic-gerrymander.

confirm that the Remedial Plan exhibits no partisan bias in favor of either party. If

necessary, Proposed Intervenors will present such evidence to this Court.

Just last evening, Speaker Turzai and Senator Scarnati filed a new

application asking the U.S. Supreme Court to stay the Pennsylvania Supreme

Court's remedial map. *See* Ex. G. They raised the exact same arguments under

the Election Clause now raised in this lawsuit. Yet with that application pending

before the U.S. Supreme Court, Senator Scarnati's deputies in the General

Assembly filed this action today seeking the same emergency relief.

## QUESTIONS PRESENTED

1. **Whether Proposed Intervenors are entitled to intervene as of right under Federal Rule of Civil Procedure 24(a) to defend the final judgment and remedy they obtained in the underlying state court litigation.**

2. **Alternatively, whether the Court should grant permissive intervention to Proposed Intervenors under Federal Rule of Civil Procedure 24(b).**

## ARGUMENT

Federal courts routinely permit intervention by voters like the individual

Proposed Intervenors in redistricting litigation. *See, e.g., Georgia v. Ashcroft*, 539

U.S. 461, 476-77 (2003); *Texas v. United States*, No. 1:11-cv-1303, ECF No. 11

(D.D.C. Aug. 16, 2011); *Georgia v. Holder*, No. 1:10-cv-1062, ECF No. 30

(D.D.C. Aug. 3, 2010); *Wright v. City of Albany*, 306 F. Supp. 2d 1228, 1230-31

(M.D. Ga. 2003). The case for intervention here is even stronger. As plaintiffs in

the state court action that Senator Scarnati's deputies seek to overturn here,

Proposed Intervenors have a unique interest in defending the state high court's judgment and remedy.  And their interests will not be adequately represented by state election officials who were defendants in the state court action.  Proposed Intervenors are entitled to intervene in this action as of right under Rule 24(a)(2), or alternatively by permission under Rule 24(b)(1)(B).

## I.      Proposed Intervenors Are Entitled To Intervene as of Right

"On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  A party seeking intervention as of right under Rule 24(a)(2) must show that: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Benjamin ex rel Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 948 (3d Cir. 2012).  Proposed Intervenors satisfy each factor.

### A.      This Motion To Intervene Is Timely

To assess if a motion to intervene is timely, courts consider the stage of the proceeding, the prejudice that any delay may cause the parties; and the reason for

any delay. *Benjamin*, 701 F.3d at 949. This action was filed just hours ago today, and there has been no delay at all.

### B.    Proposed Intervenors' Interest in this Action Is Overwhelming

Proposed Intervenors plainly have a "sufficient interest" in this action to warrant intervention as of right. *Benjamin*, 701 F.3d at 948. Their interest is both "specific" to them and "capable of definition." *Id.* at 949; *see also Kleisser v. U.S. Forest Service*, 157 F.3d 963, 972 (3d Cir. 1998) (intervenor's interest must be "direct" as opposed to "remote"). Proposed Intervenors are the plaintiffs in the state court action, responsible for litigating that action and obtaining the Remedial Plan challenged here. The Pennsylvania Supreme Court held that the 2011 Plan "deprives *Petitioners* of their state constitutional right to free and equal elections." Op. 125 (emphasis added). Proposed Intervenors—who were the plaintiffs in the state court litigation—have an overwhelming interest in ensuring that this federal action does not eviscerate this critical state constitutional right.

### C.    This Action Directly Threatens Proposed Intervenors' Interests

Absent intervention, Proposed Intervenors' interest in defending the Pennsylvania Supreme Court's judgment and remedy "will be directly affected in a substantially concrete fashion by the relief sought." *Benjamin*, 701 F.3d at 951 (quotations omitted). Were this Court to grant the relief sought, it would eliminate the remedy Proposed Intervenors secured in the Pennsylvania Supreme Court for

11

their constitutional injury. Such relief would deprive Proposed Intervenors of their right to "free and equal" elections under the Pennsylvania Constitution.

In similar circumstances, courts have held that litigants who obtained a judgment in a prior action are entitled to intervene as of right in a later action that threatens the relief awarded under the prior judgment. For example, in *American International Surplus Lines Insurance Co. v. IES Lead Paint Division, Inc.*, a building owner sued an asbestos abatement company in state court asserting tort and contract claims in connection with a faulty asbestos removal and won a $1 million money judgment. No. CIV. A. 94-4627, 1995 WL 49295, at *1 (E.D. Pa. Feb 2, 1995). Before the owner collected the judgment, the asbestos abatement company was sued in federal court by its insurer, which sought a declaration that the company's insurance policy did not cover the faulty removal. *Id.* at *2. The building owner moved to intervene in the federal case, and the federal court granted intervention as of right because there was "no doubt that [the building owner's] interest would be affected by this litigation." *Id.* at *3. The court explained that the federal court action could jeopardize the building owner's entitlement "to receive full payment on the [state court] judgment." *Id.*

Likewise, here, Proposed Intervenors obtained a judgment from the Pennsylvania Supreme Court and a remedy to redress their constitutional injury. The relief sought in this action directly threatens to eliminate that remedy. What's

12

more, none of the defendants in this action, who are named only in their official capacities, face the same potential harm as Proposed Intervenors—having to vote in another election under a congressional map that violates their rights under the Pennsylvania Constitution. Pennsylvania voters, in addition to elected officials, deserve to be heard as parties to this case.

**D.    Proposed Intervenors' Interests Are Not Adequately Represented**

The Pennsylvania election officials named as defendants in this action cannot adequately represent Proposed Intervenors' interests in protecting the judgment they obtained in the state court. From the beginning, Proposed Intervenors were the ones litigating the state court action. They filed the complaint in Commonwealth Court, petitioned the Pennsylvania Supreme Court to grant extraordinary jurisdiction, put on all the affirmative evidence of the 2011 Plan's invalidity at trial, and argued the merits and remedy before the Pennsylvania Supreme Court. The election officials named here were *defendants*, not plaintiffs, in the state court action, and they did not actively participate at trial. Indeed, all of the expert witnesses who challenged the 2011 Plan—and the only expert witnesses found credible—were presented by Proposed Intervenors. *See Kleissler*, 157 F.3d at 974 ("The early presence of intervenors may serve to prevent errors from creeping into the proceedings" and "clarify some issues.").

While a government entity may be considered a presumptively adequate

representative, *see, e.g.*, *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108,

1123 (3d Cir. 1992)), the Supreme Court has made clear that "[t]he requirement of

the Rule is satisfied if the applicant shows that representation of his interest 'may

be' inadequate; and the burden of making that showing should therefore be treated

as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972).

Courts have allowed intervention as of right even where a government party

has similar interests to a proposed intervenor.  For example, the Third Circuit has

allowed a non-government party to intervene as of right where "an agency's

views" as a government actor are necessarily distinct from those of a "proposed

intervenor whose interest is personal to it." *Benjamin*, 701 F.3d at 958; *see also*

*Griffin v. Burns*, 570 F.2d 1065, 1072 (1st Cir. 1978) ("A person's interest in

participating in the political process through voting and having his vote counted is

a right both 'individual and personal in nature.'" (quoting *Reynolds v. Sims*, 377

U.S. 533, 561 (1964))).

Other courts have granted intervention as of right where an aligned

government party's workload, time, or priority constraints may threaten the

proposed intervenors' interests. *See, e.g.*, *Solid Waste Agency of N. Cook Cty. v.*

*U.S. Army Corps of Engineers*, 101 F.3d 503, 508 (7th Cir. 1996).  Similarly,

intervention as of right has been granted where the proposed intervenors'

participation may "serve as a vigorous and helpful supplement" to the government party's defense, particularly where issues may "turn on questions of very technical detail and data." *NRDC v. Costle*, 561 F.2d 904, 913 (D.C. Cir. 1977) (citing *N.Y. Pub. I. R. G. v. Regents*, 516 F.2d 350 (2d Cir. 1975)).

All of these factors support intervention as of right here. While Proposed Intervenors do not question the election officials' interest in defending this lawsuit, Proposed Intervenors have extensive institutional knowledge concerning the underlying state court action that will benefit this Court in resolving this case expeditiously. Their experience litigating this redistricting dispute since its inception will undoubtedly "serve as a vigorous and helpful supplement" to the election officials' involvement as the named defendants. *Costle*, 561 F.2d at 913.

## II.   Alternatively, the Court Should Grant Permissive Intervention

Even if Proposed Intervenors were not entitled to intervene as of right, permissive intervention would be warranted under Rule 24(b). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). The court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "In deciding whether to permit intervention under Rule 24(b)(1)(B), courts consider whether the proposed intervenors will add anything to the litigation." *Am.*

*Farm Bureau Fed'n v. U.S. EPA*, 278 F.R.D. 98, 111 (M.D. Pa. 2011) (internal quotation marks and citation omitted); *see also Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 138 F. Supp. 2d 593, 602 (M.D. Pa. 2001).

As explained above, this motion is timely. And intervention will cause no delay or prejudice at all, much less undue delay or prejudice, because Proposed Intervenors will file their opposition to the motion for a TRO and a motion to dismiss on the same schedule as the named defendants.

Beyond that, Proposed Intervenors bring a perspective that differs from that of the other parties, and may clarify issues that the other parties could overlook. *See, e.g., Am. Farm Bureau*, 278 F.R.D. at 111 ("[G]iven the complexity and voluminous size of the administrative record, which includes scientific models, the court finds that the presence of the intervenors may serve to clarify issues and, perhaps, contribute to resolution of this matter."); *Johnson v. Mortham*, 915 F. Supp. 1529, 1538-39 (N.D. Fla. 1995) ("[T]he NAACP is granted leave to permissively intervene. In [a related prior lawsuit], the NAACP submitted a redistricting plan that substantially influenced the Special Master in the creation of Plan 308 and District Three."). Participation of Proposed Intervenors here will aid the Court and promote judicial economy. Their submissions "would be relevant to the question of whether" this Court should upend the Pennsylvania

Supreme Court's judgment and interfere with the Commonwealth's electoral

process. *Cloverland-Green*, 138 F. Supp. 2d at 602.

## CONCLUSION

For the foregoing reasons, the Court should grant intervention as of right

under Rule 24(a), or alternatively permit Proposed Intervenors to intervene under

Rule 24(b).  Pursuant to Rule 24(c), Proposed Intervenors will submit a proposed

Answer and Affirmative as Exhibit H immediately tomorrow morning, but submit

this intervention motion now given the emergency temporary restraining order that

plaintiffs have request.


Dated:  February 22, 2018                Respectfully Submitted,

                                         */s/ Thomas B. Schmidt III*
                                         Thomas B. Schmidt III (PA 19196)
                                         Justin G. Weber (PA 89266)
                                         PEPPER HAMILTON LLP
                                         Telephone: +1 717.255.1164
                                         Facsimile: +1 717.238.0575
                                         100 Market Street, Suite 200
                                         P.O. Box 1181
                                         Harrisburg, PA 17108
                                         schmidtt@pepperlaw.com

17

Mary M. McKenzie*
(PA 47434)
Michael Churchill*
(PA 4661)
Benjamin D. Geffen*
(PA 310134)
PUBLIC INTEREST LAW CENTER
1709 Benjamin Franklin Parkway
2nd Floor
Philadelphia, PA 19103
Telephone: +1 215.627.7100
Facsimile: +1 215.627.3183
mmckenzie@pubintlaw.org

David P. Gersch*
John A. Freedman*
R. Stanton Jones*
Elisabeth S. Theodore*
Daniel F. Jacobson*
John Robinson*
John Cella* (PA 312131)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Facsimile: +1 202.942.5999
david.gersch@arnoldporter.com

Andrew D. Bergman*
ARNOLD & PORTER
  KAYE SCHOLER LLP
Suite 4000
700 Louisiana Street
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499
* Motion for admission *pro hac vice*
forthcoming

*Attorneys for Proposed Intervenors*

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

Pursuant to Local Rule 7.8(b)(2), I, Thomas B. Schmidt III, hereby certify

that the foregoing Brief in Support of Motion to Intervene as Defendants, contains

3,839 words, calculated using Microsoft Word's word count feature.


/s/ Thomas B. Schmidt III
Thomas B. Schmidt III