IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB CORMAN, in his official capacity as Majority Leader of the Pennsylvania Senate, MICHAEL FOLMER, in his official capacity as Chairman of the Pennsylvania Senate State Government Committee, LOU BARLETTA, RYAN COSTELLO, MIKE KELLY, TOM MARINO, SCOTT PERRY, KEITH ROTHFUS, LLOYD SMUCKER, and GLENN THOMPSON,<br><br>        Plaintiffs,<br><br>        v.<br><br>ROBERT TORRES, in his official capacity as Acting Secretary of the Commonwealth, and JONATHAN M. MARKS, in his official capacity as Commissioner of the Bureau of Commissions, Elections, and Legislation,<br><br>        Defendants,<br>    and<br><br>NATIONAL DEMOCRATIC REDISTRICTING COMMITTEE,<br><br>        (Proposed) Intervenor-Defendant. | Civil Action No. 1:18-cv-00443-CCC<br><br>Chief Judge Conner |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANT

**INTRODUCTION**

National Democratic Redistricting Committee ("NDRC") seeks to participate as an intervening defendant in the above-captioned lawsuit, which is the latest in a series of attempts by Republican lawmakers to reinstate Pennsylvania's 2011 congressional districting plan ("the 2011 Plan"). Despite the Pennsylvania Supreme Court's ruling that the 2011 Plan is an unconstitutional partisan gerrymander, Republican lawmakers—who stand to benefit from the continued infringement of Democratic voters' constitutional rights—bring this action to invalidate the Pennsylvania Supreme Court's remedial congressional districting map ("Remedial Plan"). *See* Order, *League of Women Voters, et. al. v. Commonwealth of Pennsylvania, et al.*, No. 159 MM 2017 (Sup. Ct. PA Jan. 22, 2018) ("*LWV* Order"); Per Curiam Opinion and Order Adopting Remedial Plan, No. 159 MM 2017 (Sup. Ct. PA Feb. 19, 2018) ("Remedial Plan Order"). NDRC is entitled to intervene in this case, as a matter of right under Federal Rule of Civil Procedure 24(a)(2), to protect its interest in advancing fair redistricting plans that eliminate unconstitutional gerrymanders and remedy the dilution of Democratic voting strength. In the alternative, NDRC requests permissive intervention pursuant to Rule 24(b).

## A. STATEMENT OF FACTS, PROCEDURAL HISTORY, AND INTERESTS OF NDRC

Plaintiffs in this lawsuit seek to enjoin the Pennsylvania Supreme Court's February 19, 2018 Order, which adopted a remedial congressional districting map to be implemented for the 2018 primary and general elections. The Court's Order marked the culmination of a legal challenge that began in June 2017, when a group of Pennsylvania voters filed a lawsuit in Pennsylvania's Commonwealth Court challenging the 2011 Plan under the state constitution. *See* Petition for Review, *League of Women Voters, et. al. v. Commonwealth of Pennsylvania*, *et al.*, No. 261 MD 2017 (Commw. Ct. PA June 15, 2017). The voters alleged, *inter alia*, that the 2011 Plan intentionally burdened their right to vote and discriminated against them on the basis of their political beliefs in violation of the Free and Equal Elections Clause of Article I, Section 5 of the Pennsylvania Constitution. *See id*. Their claims arose solely under state law. Republican leaders in the Pennsylvania General Assembly defended the map's constitutionality.

On January 22, 2018 (following an appeal of the Commonwealth Court's decision to stay the case), the Pennsylvania Supreme Court declared that the 2011 Plan's partisan dilution of votes "plainly and palpably violates the Constitution of the Commonwealth of Pennsylvania," specifically the Free and Equal Elections Clause, Pa. Const. art. I, § 5. *LWV* Order at 2. The Court offered the General Assembly a full eighteen days to submit a plan complying with the requirements of

the Pennsylvania Constitution to the Governor. After they failed to do so, and with the intent to avoid disrupting the May 15, 2018 primary election, on February 19, 2018, the Supreme Court of Pennsylvania released its Remedial Plan based on the materials submitted by the parties and *amici*, and the criteria necessary to ensure constitutional compliance. *See* Remedial Plan Order. Dissatisfied with the Court's Remedial Plan, Republican lawmakers, Michael Turzai and Joseph Scarnati, filed an emergency application two-days ago before the U.S. Supreme Court requesting a stay of the Pennsylvania Supreme Court's Order. The following day, another group of Republican lawmakers, represented by the same counsel as Turzai and Scarnati, filed this lawsuit seeking to challenge the Pennsylvania Supreme Court's Remedial Plan, asserting essentially the same arguments raised in Turzai an Scarnati's U.S. Supreme Court filing.

NDRC, a tax-exempt political organization under section 527 of the Internal Revenue Code, is focused on redistricting reform. Its mission is to make the redistricting system fair, and to remedy deliberate and extreme partisan gerrymandering and the dilution of Democratic votes, such as occurred in Pennsylvania in 2011. NDRC works to increase voter engagement in the redistricting process, enact fairer redistricting plans, and challenge unconstitutional redistricting plans in court. Furthermore, NDRC has a particular and distinct interest in Pennsylvania's redistricting process. Pennsylvania is one of twelve states NDRC is

focusing on as part of its effort to combat the deleterious effects of extreme Republican partisan gerrymanders after the 2010 elections. As such, NDRC has expended, and continues to invest, significant time and resources into ensuring Pennsylvania's redistricting plan reflects the will of its voters, and protects the rights of Democratic voters within the state.

In light of the Pennsylvania Supreme Court's finding that the Republican-led General Assembly unlawfully gerrymandered the state's congressional districts, NDRC has a significant and cognizable interest in this lawsuit, where Republican lawmakers seek to invalidate a non-partisan remedial map.

The Complaint in this matter was filed on February 22, 2018. No hearings have been scheduled at this time.

## B.     QUESTIONS PRESENTED

1. Whether NDRC is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2).
2. Whether the Court should grant NDRC permissive intervention under Federal Rule of Civil Procedure 24(b).

## C.     ARGUMENT

Ensuring fair maps and remedying the unconstitutional dilution of Democratic voting strength in Pennsylvania is central to NDRC's core mission. NDRC has a unique and cognizable interest in this lawsuit because of this mission, and because

Pennsylvania—one of the most partisan gerrymandered states in the nation and therefore one of the organization's twelve target states—conducted elections for years under a congressional districting map that the Pennsylvania Supreme Court recently determined was an unconstitutional gerrymander. Plaintiffs' requested relief seeks to invalidate the Pennsylvania Supreme Court's non-partisan, Remedial Plan and reinstate the unconstitutional 2011 Plan; thus, the resolution of Plaintiffs' lawsuit will undoubtedly impact NDRC's ability to protect its interests and advance its mission in Pennsylvania. As such, NDRC meets the requirements for intervention as a matter of right under Federal Rule of Civil Procedure 24(a)(2); and, in the alternative, this Court should exercise its discretion to permit NDRC's intervention under Rule 24(b).

### 1. NDRC IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT UNDER RULE 24(A)(2).

NDRC easily meets the test applied in the Third Circuit to motions to intervene as of right. Specifically, (1) NDRC's motion is timely; (2) NDRC possesses an interest in the subject matter of the action; (3) denial of its motion would impair or impede its ability to protect its interest; and (4) its interest is not adequately represented by the existing parties to the litigation. Fed. R. Civ. P. 24(a)(2); *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987).

### a. NDRC'S Motion to Intervene is Timely.

Having filed its motion to intervene just a day after Plaintiffs initiated this action, NDRC's request is unquestionably timely. Indeed, NDRC seeks to intervene at the earliest possible stage of the lawsuit, when no responsive pleadings or substantive motions have been filed by the defendant in response to the Complaint; no further action has been taken on the merits of Plaintiffs' claims; and NDRC's involvement in the case will not impact any scheduling order issued by the Court. Accordingly, no party can legitimately claim that intervention by NDRC would cause any prejudicial delay. Under these circumstances, the Court should find the motion timely. *See, e.g.*, *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 104 (M.D. Pa. 2011) (finding intervention motion timely when filed less than three months after the plaintiffs' amended complaint and before "any proceeding of substance on the merits.").

### b. NDRC Possesses a Significant, Legally Cognizable Interest in the Substance of this Litigation.

Consistent with its core mission, NDRC has a significant and cognizable interest in ensuring fair redistricting plans that will reverse the unconstitutional dilution of Democratic voting strength in Pennsylvania, and will result in elections that more accurately reflect the will of Pennsylvania voters. *See id*. at 107 (holding that environmental groups with an interest in restoring and preserving Chesapeake

Bay had a legally protected interest and right to intervene in a lawsuit challenging EPA regulations affecting the Bay's usage).

"To justify intervention as of right, the applicant must have an interest 'relating to the property or transaction which is the subject of the action' that is 'significantly protectable.'" *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971), superseded on other grounds by 26 U.S.C. § 7609). Yet applicants "need not possess an interest in each and every aspect of the litigation" to justify intervention. *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 951 (3d Cir. 2012). "Instead, '[t]hey are entitled to intervene as to specific issues so long as their interest in those issues is significantly protectable.'" *Id.* (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995)).

The Remedial Plan at issue in this lawsuit was adopted by the Pennsylvania Supreme Court in order to remedy the Republican-led General Assembly's unconstitutional partisan gerrymander. *See* Remedial Plan Order at 2. Specifically, the Pennsylvania Supreme Court found that the prior 2011 Plan diluted "the power [of Democrats in Pennsylvania] to vote for congressional representatives who represent their views," in violation of their constitutional rights. Opinion, *League of Women Voters, et. al. v. Commonwealth of Pennsylvania, et al.*, No. 159 MM 2017

at 128 (Sup. Ct. PA Feb. 17, 2018). And it is clear that this lawsuit was instigated by Republican lawmakers in a last-ditch effort to preserve the partisan advantages that flowed from their gerrymandered districts. Thus, Plaintiffs' attempt to invalidate the Remedial Plan strikes at the heart of NDRC's core mission, and its efforts to ensure a fair districting map for Democrats in Pennsylvania.

### c. The Disposition of Plaintiffs' Lawsuit May Impair NDRC's Ability to Protect Its Interests.

Similarly, NDRC meets the third factor for intervention as of right, because the disposition of Plaintiffs' lawsuit may, as a practical matter, impair or impede NDRC's ability to ensure fair maps for the 2018 elections. Fed. R. Civ. P. 24(a)(2).

When considering this factor, courts "look[] to the 'practical consequences' of denying intervention," recognizing that even if the party seeking to intervene may vindicate its interests in some later litigation, that is not a sufficient basis to deny intervention under Rule 24(a)(2). *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977); *see also Mountain Top Condo*, 72 F.3d at 368 ("proposed intervenors must also demonstrate that their interest *might* become affected or impaired, as a practical matter, by the disposition of the action in their absence") (emphasis in original). Furthermore, a proposed-intervenor may satisfy this factor by showing that its rights may be affected by a proposed remedy, even if it would not be barred from bringing a later action in its name. *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) ("this factor may be satisfied if, for

example, . . . the applicants' rights may be affected by a proposed remedy" but "[a]n applicant need not, however, prove that he or she would be barred from bringing a later action or that intervention constitutes the only possible avenue of relief"); *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1185 n. 15 (3d Cir. 1994) (similar).

Plaintiffs' seek an injunction barring use of the Remedial Plan in 2018 and requiring reversion to a map that severely diminishes Democratic voting strength in violation of the Pennsylvania Constitution. Compl. ¶ 7. There simply would be no realistic option for NDRC to vindicate its rights in a separate proceeding, following the resolution of this action, because such action could not be resolved in time for the 2018 primary or general election. Indeed, the Pennsylvania Supreme Court's decision to allow the March 13, 2018 special election for Pennsylvania's 18th Congressional District to proceed under the 2011 Plan—despite finding that plan unconstitutional—further illustrates the insurmountable hurdles that NDRC would encounter in obtaining relief and protecting its rights even if it were to prevail in a separate proceeding. *See* Remedial Plan Order at 3.

Furthermore, even if NDRC could bring a separate action following the disposition of this lawsuit, requiring it to do so would be contrary to the public interest in efficient handling of litigation. *Cf. Kleissler*, 157 F.3d at 974 (noting that postponing intervention may foster inefficiency). Both NDRC's and Defendants'

defense of the remedial map will likely involve common issues of law and fact; thus, the letter and spirit of the Rule is best promoted by granting NDRC's motion for intervention, so that it may protect its interests in this action and avoid potentially duplicative litigation.

### d. NDRC's Interests are Not Adequately Represented by the Defendants.

Finally, NDRC's interests cannot be adequately represented by Defendants whose stake in this lawsuit is defined solely by their statutory duty to implement the applicable districting plan. For this factor, NDRC's burden is "minimal." *See Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 162 (3d Cir. 1995). "Representation will be considered inadequate on any of the following three grounds: (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit." *Brody By & Through Sugzdinis*, 957 F.2d at 1123 (citing *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982)). Moreover, this requirement is satisfied if the applicant shows that representation "'may be' inadequate"; there is no requirement that an applicant show it is, in fact, inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (quoting 3B J. Moore, Federal

Practice 24.09-1(4) (1969)).

Defendants are state government officials responsible for "overseeing elections," Compl. ¶ 22, but cannot represent NDRC's interest in ensuring fair maps for Democratic voters. In the state court proceedings, Defendant Jonathan Marks and then Secretary of the Commonwealth, Pedro Cortes, made clear that their "role in congressional redistricting is limited to advertising the verbal descriptions of the newly created congressional districts in newspapers across the Commonwealth . . ." and "to administer primary and general elections for the U.S. House of Representatives in accordance with the Election Code and the redistricting plan legally in effect at the time." Answer & New Matter of Sec'y of the Commw. P. Cortes & Comm'r of Elections J. Marks to Pet. For Review ¶¶ 126-27, *League of Women Voters, et. al. v. Commonwealth of Pennsylvania*, *et al.*, No. 261 MD 2017 (Commw. Ct. PA Aug. 10, 2017). In other words, their primary concern is election administration, whatever the applicable districting plan may be. *See, e.g.*, Answer of Sec'y of the Commw. P. Cortes & Comm'r of Elections J. Marks in Opp. To Appl. To Stay, at 2, 5-6, *League of Women Voters, et. al. v. Commonwealth of Pennsylvania*, *et al.*, No. 261 MD 2017 (Commw. Ct. PA Aug. 23, 2017). The fairness of a proposed map, particularly with respect to Democratic voters in gerrymandered districts, is secondary to their official duties. *See Ohio River Valley Envtl. Coal., Inc. v. Salazar*, No. 3:09-0149, 2009 WL 1734420, at *1 (S.D.W.Va.

June 18, 2009) (granting motion to intervene as of right where defendant and proposed intervenor had identical goals but the "difference in degree of interest could motivate the [intervenor] to mount a more vigorous defense" and "[t]he possibility that this difference . . . could unearth a meritorious argument overlooked by the current Defendant justifies the potential burden on having an additional party in litigation").

As a result, Defendants' and NDRC's interests may diverge in addressing a number of issues that may arise in this lawsuit, and Defendants may not "be able to devote proper attention to the [NDRC's] interests." *Brody By & Through Sugzdinis*, 957 F.2d at 1123 (citations omitted); *Kleissler*, 157 F.3d at 973-74 (noting that agency defendant represented numerous complex and conflicting interests and agency's decision not to appeal adverse ruling may give "legitimate pause to [proposed-intervenors'] confidence in adequate representation by [the agency].").

At bottom, Defendants, in administering elections, represent a variety of constituents with competing goals. They cannot prioritize the interests of Democratic voters whose votes were unconstitutionally diluted in the prior redistricting plan. *See Trbovich*, 404 U.S. at 539 (holding that proposed intervenor's interests are not adequately represented where current defendant is obligated to serve two distinct interests, which are related, but "may not always dictate precisely the same approach to the conduct of the litigation."). NDRC, on the other hand, is

singularly focused on ensuring fair districting maps, and preventing the implementation of districting plans that unconstitutionally dilute Democratic voting strength. Because NDRC's significant, cognizable interests are not adequately protected by Defendants in this action, NDRC is entitled to intervention as of right.

2. **IN THE ALTERNATIVE, NDRC REQUESTS THAT THE COURT GRANT IT PERMISSION TO INTERVENE UNDER RULE 24(B).**

If the Court does not grant intervention as a matter of right, NDRC respectfully requests that the Court exercise its discretion to allow it to intervene under Rule 24(b). The Court has broad discretion to grant a motion for permissive intervention when the Court determines that: (1) the intervenor's claim or defense and the main action have a question of law or fact in common, and that (2) the intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b)(1)(B); *Brody*, 957 F.2d at 1115. Courts have specifically permitted intervention by parties whose interests are affected by the implementation of a districting plan. *See, e.g.*, *League of Women Voters of Haverford Twp. v. Bd. of Comm'rs. of Haverford Twp.*, CIV. A. No. 86-0546, 1986 WL 3868 at *2 (E.D. Pa. Mar. 27, 1986) (granting motion for permissive intervention where it "further[ed] plaintiffs'] interest in seeing an effective redistricting plan"); *Graham v. Thornburgh*, 207 F. Supp. 2d 1280, 1282 (D. Kan. 2002); *Pac for Middle Am. v. State Bd. of Elections*, No. 95 C 827, 1995 WL 571893

(N.D. Ill. Sept. 22, 1995); *Bossier Par. Sch. Bd. v. Reno*, 157 F.R.D. 133 (D.D.C. 1994).

NDRC easily meets the requirements for permissive intervention. First, NDRC and Defendants will inevitably raise common questions of law and fact in defending this lawsuit and the Remedial Plan. Second, for the reasons set forth above, the motion is timely, and, given the early stage of this litigation, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. To the contrary, NDRC is prepared to proceed in accordance with any litigation schedule imposed in this action, and its intervention will only serve to contribute to the full development of the factual and legal issues before the Court.

### D. CONCLUSION

For the reasons stated above, NDRC respectfully requests that the Court grant its motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit it to intervene under Rule 24(b). If granted permission to intervene under either provision, NDRC has submitted a proposed Answer in intervention for filing in accordance with the Federal and Local Rules of Civil Procedure.

| | |
|---|---|
| Dated: February 23, 2018 | By: */s/ Kay Kyungsun Yu* |

Kay Kyungsun Yu Attorney ID No. 83701
Ahmad Zaffarese LLC
One South Broad St, Suite 1810
Philadelphia, PA 19107
Phone: (215) 496-9373
Facsimile: (215) 496-9419
Email: kyu@azlawllc.com

Adam C. Bonin, PA Bar No. 80929
The Law Office of Adam C. Bonin
30 South 15th Street
15th Floor
Philadelphia, PA 19102
Phone: (267) 242-5014
Facsimile: (215) 701-2321
Email: adam@boninlaw.com

Marc Erik Elias (*pro hac vice-to be filed*)
Bruce V. Spiva (*pro hac vice-to be filed*)
Uzoma Nkwonta (*pro hac vice-to be filed*)
Brian Simmonds Marshall (*pro hac vice-to be filed*)
Aria C. Branch (*pro hac vice-to be filed*)
Amanda R. Callais (*pro hac vice-to be filed*)
Alex G. Tischenko (*pro hac vice-to be filed*)
Perkins Coie, LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
melias@perkinscoie.com
bspiva@perkinscoie.com
unkwonta@perkinscoie.com
bmarshall@perkinscoie.com
abranch@perkinscoie.com
acallais@perkinscoie.com
atischenko@perkinscoie.com

Caitlin Foley (*pro hac vice-to be filed*)
Perkins Coie, LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Telephone: (312) 324-8400
Facsimile: (312) 324-9400
cfoley@perkinscoie.com

***Attorneys for Proposed Intervenor-Defendant***

## CERTIFICATE OF SERVICE

I certify that on February 23, 2018, I filed the foregoing with the Clerk of the Court using the ECF System which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

Date: February 23, 2018

*/s/ Kay Kyungsun Yu*