# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACOB CORMAN, in his official capacity as Majority Leader of the Pennsylvania Senate, MICHAEL FOLMER, in his official capacity as Chairman of the Pennsylvania Senate State Government Committee, LOU BARLETTA, RYAN COSTELLO, MIKE KELLY, TOM MARINO, SCOTT PERRY, KEITH ROTHFUS, LLOYD SMUCKER, and GLENN THOMPSON, | : : : : : : : : : : : : : : : | No. 18-cv-00443-CCC<br><br>Judge Jordan<br>Chief Judge Conner<br>Judge Simandle<br><br>(*filed electronically*) |
| Plaintiffs, | : : | |
| v. | : : | |
| ROBERT TORRES, in his official capacity as Acting Secretary of the Commonwealth, and JONATHAN M. MARKS, in his official capacity as Commissioner of the Bureau of Commissions, Elections, and Legislation, | : : : : : : : | |
| Defendants. | : : | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA ET AL.'S MOTION TO INTERVENE AS DEFENDANTS (DOC. 5)

# TABLE OF CONTENTS

I.  COUNTER STATEMENT OF HISTORY OF THE CASE.............................3

II. ARGUMENT.......................................................................5

    A.  The *LWV* Parties Do Not Have A Sufficient Interest In This Litigation. .....6

    B.  The Remedy Plaintiffs Seek Will Not Impact The *LWV* Parties' Interests. .9

    C.  The *LWV* Parties' Interests Are Adequately Represented. .........................10

    D.  This Court Should Deny The *LWV* Parties' Request For Permissive Intervention..........................................................................................16

III. CONCLUSION ............................................................17

# TABLE OF AUTHORITIES

**Cases**

*Agre v. Wolf*, No. 17-4392 (E.D. Pa. 2017) ...............................................................11

*American Int'l Surplus Lines Ins. Co. v. IES Lead Paint Div., Inc.,* No. 94-4627, 1995 U.S. Dist. LEXIS 1464 (E.D. Pa. Feb. 2, 1995)...........................................10

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938 (3d Cir. 2012) .............................................................................................................................14

*Benjamin v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938 (3rd Cir. 2012) ................9

*Brody v. Spang*, 957 F.2d 1108 (3d Cir. 1992).....................................................3, 16

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)...............................................8

*Diamond v. Torres*, No. 17-5054 (E.D. Pa. Jan. 23, 2018) ............................. 11, 13

*Georgia v. Ashcroft*, 195 F. Supp. 2d 25 (D.D.C. 2002) ...........................................7

*Georgia v. Ashcroft*, 539 U.S. 461 (2003) ................................................................7

*Georgia v. Holder*, 748 F. Supp. 2d 16 (D.D.C. 2010) .............................................7

*Georgia v. Holder*, No. 10-1062 (D.D.C. Aug. 3, 2010).........................................7

*Growe v. Emison*, 507 U.S. 25 (1993) .......................................................................4

*Hollingsworth v. Perry*, 558 U.S. 183 (2010)............................................................6

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277 (3d Cir. 2005)...................................................................2, 11

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3rd Cir. 1998).................................15

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3rd Cir. 2005)........ 1, 5, 6, 9

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.,* 72 F.3d 361 (3rd Cir. 1995) ............................................................................................5, 7

150886.00601/106664905v.1

*Reynolds v. Sims*, 377 U.S. 533 (1964)....................................................................17

*Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245 (3rd Cir. 2017)................6, 7

*Texas v. United States*, No. 11-1303 (D.D.C. July 21, 2011 and Aug. 16, 2011).....7

*Trbovich v. United Mine Workers*, 404 U.S. 528 (2010).........................................15

*United States v. Hays*, 515 U.S. 737 (1995) ..............................................................7

*Wright v. City of Albany*, 306 F. Supp. 2d 1228 (M.D. Ga. 2003) ...........................7

**Rules**

Fed. R. Civ. P. 24(a)..............................................................................................1, 5

Fed. R. Civ. P. 24(b) ...........................................................................................1, 16

150886.00601/106664905v.1

# INTRODUCTION

Proposed Intervenors, *League of Women Voters of Pennsylvania et al.* ("*LWV* Parties") should not be permitted to intervene in this action as they simply cannot satisfy the requisite criteria set forth by Fed. R. Civ. P. 24(a) and 24(b). Specifically, the *LWV* Parties cannot demonstrate that they have a "sufficient interest" in this litigation and/or that such alleged interest would be affected or impaired by the disposition of this action. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3rd Cir. 2005). Indeed, their interest is no different from that of any other Pennsylvanian who has the right to vote in the upcoming Congressional election—an interest being defended by the named defendants in this action ("Defendants"). Moreover, that the *LWV* Parties happen to be the successful Petitioners in the action pursued before the Pennsylvania Supreme Court resulting in the invalidation of the 2011 Plan is of no moment, as the spoils of that success are now being defended vigorously by Defendants who have stated their intention to move to dismiss Plaintiffs' claims.

Additionally, the *LWV* Parties are unable to demonstrate that their interests are not being adequately represented by Defendants. *Liberty Mut.*, 419 F.3d at 220. "[W]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan*

150886.00601/106664905v.1

*Litig.*, 418 F.3d 277, 315 (3d Cir. 2005). And "[t]o overcome the presumption of adequate representation, the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of the party to the suit." *Id.*

Here, the *LWV* Parties desire the same outcome as Defendants, i.e., the validation of the Pennsylvania Supreme Court's actions and the retention of the Court Drawn Plan.[1] *See, e.g.*, Brief in Support of Motion to Intervene as Defendants (Doc. 6) ("Brief") at 3 ("If allowed to intervene, [the *LWV* Parties] will show that this action is squarely foreclosed by multiple jurisdictional and procedural bars, and Plaintiffs' claims in any event are frivolous on the merits."); at 15 ("[The *LWV* Parties] do not question [Defendants'] interest in defending the lawsuit …"). Hence, the aforementioned presumption arises, a presumption that the *LWV* Parties cannot come close to overcoming. In fact, any such notion is easily dispelled by the fact that in the underlying *LWV* action that occurred before the Pennsylvania Supreme Court (the "*LWV* action"), the *LWV* Parties and Defendants were completely aligned in their denouncement of the 2011 Plan, both in their written filings as well as their oral argument before that court. Likewise, both the *LWV* Parties and Defendants vigorously resisted the Application to the

---

[1] Capitalized terms used herein shall have the meanings afforded such terms within Plaintiffs' Complaint ("Compl."; Doc. 1) unless otherwise defined herein.

2

U.S. Supreme Court seeking a stay of the Pennsylvania Supreme Court's decision.[2]

Nor can the *LWV* Parties reasonably suggest that Defendants, individuals with the complete resources of the Executive Branch of Pennsylvania's government, are ill-equipped or somehow undermanned to defend the Pennsylvania Supreme Court's actions.

Additionally, the Third Circuit has concluded that because the factors considered on a motion for permissive intervention are similar to those considered with respect to a motion for intervention as of right, a finding that a party is not entitled to intervene as of right almost always results in the denial of permissive intervention. *See Brody v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992). The *LWV* Parties' request for permissive intervention should be denied for all of the reasons warranting their denial of intervention as of right.

## I.     COUNTER STATEMENT OF HISTORY OF THE CASE

Plaintiffs present narrow claims that seek specific relief. Plaintiffs do not as a general proposition challenge the Pennsylvania Supreme Court's ability to declare the 2011 Plan unconstitutional under Pennsylvania's Constitution. Nor do Plaintiffs challenge the Pennsylvania Supreme Court's ability under the correct

---

[2] As explained below, Defendants' assailment of the 2011 Plan was not limited to the *LWV* action.

circumstances to craft a remedial map.[3]  Rather, the claims advanced in this action

concern only whether the map the Defendants seek to implement violates the

Elections Clause of the U.S. Constitution in two discrete ways: (1) it applied a

criteria found nowhere within Pennsylvania's Constitution or statutory framework

for Congressional districting to invalidate the 2011 Plan and craft the Court Drawn

Plan; and (2) by failing to afford Pennsylvania's Legislature an "adequate

opportunity" to enact a remedial plan.[4]  In other words, the claims advanced in this

action do not concern the claimed gerrymandered nature of the 2011 Plan, i.e., the

claims at issue in the *LWV* action.  *See* Compl. ¶¶ 93-117.

For relief, Plaintiffs seek to enjoin the use of the unconstitutionally created

Court Drawn Plan.  *Id.* at 40 (Prayer for Relief).  Thus, the relief sought in this

action is distinct from the relief sought in the *LWV* action, wherein the *LWV* Parties

sought the invalidation of the 2011 Plan as a claimed partisan gerrymander.[5]

---

[3] The *LWV* Parties' reliance on *Growe v. Emison*, 507 U.S. 25 (1993) is
therefore misplaced, *see* Brief at 2, as *Growe* merely stands for the proposition that
as between a state court and a federal court, the state court should be afforded the
ability to draw a remedial map in the first instance.

[4] While not germane to this Motion, the *LWV* Parties repeatedly
misrepresent that the General Assembly had "three weeks" to pass a new plan,
when in fact the Legislature was afforded only 18 days, the first 16 of which
passed without any explanation as to how the 2011 Plan violated Pennsylvania's
Constitution, or how a compliant remedial map could be drawn.

[5] The *LWV* Parties' Brief is full of misstatements and assertions irrelevant to
the Motion.  For example, their assertion that the Legislature did not even try to
draw a new map is belied by the allegations of Plaintiffs' Complaint wherein they
explain the efforts to enact remedial legislation subsequent to the PCO's entry.

4

## II.  ARGUMENT

Fed. R. Civ. P. Rule 24(a)(2) affords intervention as of right only if each of the following requirements is satisfied:

(1)     The application for intervention is timely;

(2)     The applicant has a sufficient interest in the litigation;

(3)     The interest may be affected or impaired, as a practical matter by the disposition of the action; **and**

(4)     The interest is not adequately represented by an existing party in the litigation.

*See Liberty Mut.,* 419 F.3d at 220; *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.,* 72 F.3d 361, 366 (3rd Cir. 1995) ("Each of these requirements must be met to intervene as of right.").

The *LWV* Parties cannot satisfy the second, third, and fourth requirements above, because they (1) lack a direct and sufficient interest in this litigation, (2) can show no unique interest that may be affected or impaired if Plaintiffs are afforded the requested relief, and (3) are adequately represented by Defendants.  As such,

---

Although the *LWV* Parties contend that the 2011 Plan was drawn in ten days, it was actually enacted over the course of three months after extensive public meetings with voters from around the Commonwealth.  The *LWV* Parties' claim that their own "independent" analysis shows that the Court Drawn Plan is fair is, of course, irrelevant to the Motion, as are references to statements about impeaching members of the Pennsylvania Supreme Court.  In the end, the Court should disregard these various statements for what they are—inflammatory window-dressing.

150886.00601/106664905v.1

the *LWV* Parties' request to intervene as of right should be denied. Moreover, as detailed below, the *LWV* Parties should be denied permissive intervention as well.[6]

### A. The *LWV* Parties Do Not Have A Sufficient Interest In This Litigation.

To intervene as of right, the *LWV* Parties must show that they have an interest "in the property or in the transaction" that is the subject matter of the lawsuit "that is significantly protectable." *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 256 (3rd Cir. 2017). This requires a showing that there is a "tangible threat" to the *LWV* Parties' legally cognizable interest, not merely that a legal interest will be incidentally affected. *See id*. at 256-57. Stated differently, the asserted interest cannot be speculative or collateral. *Liberty Mut.*, 419 F.3d at 225 (holding that interests that are collateral and speculative are insufficient to establish a right to intervene). This element is satisfied where a proposed intervenor can show that a ruling will have a "significant stare decisis effect on their claims, or if

---

[6] The *LWV* Parties' reference to Justice Alito's denial of an emergency application for stay is nothing but a red herring, not least of which because an emergency stay requires meeting an exceptionally high burden, and as such, cannot be construed as a ruling upon the ultimate merits of the claims in this action. *See* Brief at 1-2; *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (to succeed on an emergency application, an applicant must show that there is a reasonable probability that the Court will take the case and a fair prospect that a majority of the Court will reverse the decision below). Furthermore, since Justice Alito did not issue an opinion, and since the Supreme Court of Pennsylvania had not yet ordered a remedial map, it is just as likely that Justice Alito denied the emergency application for stay because the issue was not yet ripe.

150886.00601/106664905v.1

the [proposed intervenors'] rights may be affected by a proposed remedy." *Seneca Res. Corp.*, 863 F.3d at 257; *see also Mountain Top Condo. Ass'n*, 72 F.3d at 366.[7]

The *LWV* Parties' purported "interest" in this litigation centers on their assertion that they are "Pennsylvania voters with distinct interests who secured the underlying state court, state law judgment," Brief at 3, and that the Pennsylvania Supreme Court supposedly held that the 2011 Plan deprives them <u>personally</u> "of their state constitutional right to free and equal elections." *Id.* at 11. But, the Pennsylvania Supreme Court's invalidation of the 2011 Plan and promulgation of

---

[7] The cases cited by the *LWV* Parties are not to the contrary, but each involves a factually inapposite situation and none support the proposition that voters can intervene in redistricting cases brought under the Elections Clause. *See Georgia v. Ashcroft*, 539 U.S. 461, 476-77 (2003); *Georgia v. Ashcroft*, 195 F. Supp. 2d 25, 32-33 (D.D.C. 2002) (three-judge court) (permitting intervention of racial minority voters, in a judicial preclearance action under Section 5 of the Voting Rights Act, where two of the proposed intervenors were removed from majority-minority districts); *Wright v. City of Albany*, 306 F. Supp. 2d 1228, 1229-31 (M.D. Ga. 2003) (permitting intervention of voters in one person, one vote challenge brought under the Fourteenth Amendment, and challenges brought under Sections 2 and 5 of the Voting Rights Act); *Texas v. United States*, No. 11-1303 (D.D.C. July 21, 2011 and Aug. 16, 2011) (three-judge court) (ECF 5 and 11) (granting motion to intervene by racial minority voters and elected officials as well as Anglo elected representatives, who both reside and represent majority-minority districts and minority-coalition districts that would suffer retrogression under proposed redistricting plan in a judicial preclearance action brought under Section 5 of the Voting Rights Act); *Georgia v. Holder*, No. 10-1062 (D.D.C. Aug. 3, 2010) (three-judge court) (ECF 30) (granting permissive intervention of minority voters after securing consent of all parties in a judicial pre-clearance action brought under Section 5 of the Voting Rights Act); *see also Georgia v. Holder*, 748 F. Supp. 2d 16, 18 (D.D.C. 2010). Permitting intervention of racial minority voters in Section 5 preclearance actions plainly makes sense because the injury in question is specific to the voter. *See United States v. Hays*, 515 U.S. 737, 744-45 (1995).

150886.00601/106664905v.1

the Court Drawn Plan necessarily impact the entirety of Pennsylvania's 18 Congressional Districts, and therefore all Pennsylvania voters in the upcoming elections equally—including Defendants. Put differently, the interests the *LWV* Parties claim are no different from the interest of all Pennsylvanians. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (taxpayer standing rejected because the alleged injury was a grievance suffered in common with people in general).[8]

That the *LWV* Parties secured a judgment in the *LWV* action or adduced evidence during the trial in that action (*see, e.g.*, Brief at 11, 13), does not buttress the *LWV* Parties' position since the underlying factual record is neither in dispute nor germane to the legal questions advanced in this action. As noted above, what is relevant to this action is Article I, Section IV of the U.S. Constitution, not the factual record resulting in the state court's determination that the 2011 Plan violated Pennsylvania's Constitution.

In the end, the *LWV* Parties are unable to identify a cognizable unique legal interest involved in this litigation. And a ruling from this Court that the Defendants seek to implement a map in violation of the Elections Clause will have a merely incidental, collateral, and speculative impact on any interest held by the

---

[8] Plaintiffs note that the League of Women Voters was *dismissed* from the *LWV* action. If the League of Women Voters lacked standing to participate in the *LWV* action, surely it lacks standing to participate in this action.

150886.00601/106664905v.1

*LWV* Parties arising from their success before the Pennsylvania Supreme Court. *See Liberty Mut. Ins. Co*., 419 F.3d at 225. Thus, the *LWV* Parties are unable to satisfy the second requirement for intervention as of right.[9]

### B.    The Remedy Plaintiffs Seek Will Not Impact The *LWV* Parties' Interests.

The *LWV* Parties must also demonstrate that the remedy Plaintiffs seek will directly impair or affect their interests in a substantially concrete fashion. *See Benjamin v. Dep't of Pub. Welfare of Pa*., 701 F.3d 938, 951 (3rd Cir. 2012). This they cannot do. The judgment the *LWV* Parties secured from the Pennsylvania Supreme Court is a judgment affecting all 18 Pennsylvania Congressional Districts, and is therefore a judgment affecting all Pennsylvanians. Likewise, if the Court granted Plaintiffs the requested relief, i.e., enjoining the use of the Court Drawn Plan, it would affect all Pennsylvanians equally.

The *LWV* Parties' reliance on *American Int'l Surplus Lines Ins. Co. v. IES Lead Paint Div., Inc.* (Brief at 12), is misplaced; indeed, that decision weighs against their argument. No. 94-4627, 1995 U.S. Dist. LEXIS 1464 (E.D. Pa. Feb.

---

[9] Proposed Intervenors' denunciation of certain state senator Plaintiffs as being mere "deputies" for the state senators who have been involved in the other three recent partisan gerrymandering litigations is particularly curious. Brief at 2. Contrary to the *LWV* Parties' aspersions, Plaintiffs are leading members of the Pennsylvania Senate elected separately from every other member of the Pennsylvania Senate, and U.S. Congressmen whose seats are being directly affected by the Pennsylvania Supreme Court's unconstitutionally-imposed Court Drawn Plan.

9

2, 1995).  In *American Int'l*, the building owner secured a $1 million judgment against a company for faulty asbestos removal in the owner's building.  *Id.* at *3-4. The building owner therefore had a significant and direct interest in a subsequent lawsuit between the asbestos removal company and its insurer where the insurer sought a declaration that it did not cover faulty asbestos removal – because the building owner's $1 million judgment might not be collectible if the insurance company won.  *Id*. at *8.

Here, of course, the Court Drawn Plan is not a determination or remedy personal to the *LWV* Parties.  On the contrary, this determination and subsequent remedy impacts all Pennsylvania voters equally.  Indeed, an order from this Court enjoining use of the Court Drawn Plan and ordering use of the 2011 Plan for the upcoming 2018 Congressional elections creates no different burden for the *LWV* Parties than for any other Pennsylvanian who is entitled to vote in the upcoming Congressional election.  Thus, the *LWV* Parties fail to satisfy the third requirement for intervention as of right.

### C.   The *LWV* Parties' Interests Are Adequately Represented.

"[W]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d at 315 (internal citations omitted).  "To overcome the presumption

of adequate representation, the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit." *Id*.

Here, the *LWV* Parties cannot come close to overcoming the aforementioned presumption. In short, even a cursory review of Defendants' stated positions and activities within the *LWV* action, as well as two actions pending before the United States District Court for the Eastern District of Pennsylvania each challenging the 2011 Plan, *Agre v. Wolf*, No. 17-4392 (E.D. Pa. 2017) ("*Agre*"), and *Diamond v. Torres*, No. 17-5054 (E.D. Pa. Jan. 23, 2018) ("*Diamond*"), demonstrate conclusively Defendants' complete fidelity to and alignment with the *LWV* Parties' positions and interests—i.e., the invalidation of the 2011 Plan and promulgation of a remedial map.

The *LWV* Parties suggest that Defendants' interests are not aligned with theirs because Defendants were "defendants in the state court action," Brief at 3; and presented no witnesses or evidence at trial in that action. *Id.* at 3, 13. But, Defendants' failure to adduce any evidence at trial is of no moment, as any such evidence is irrelevant to the claims advanced by Plaintiffs in this action. Moreover, and more importantly, while Defendants were denoted "defendants" in the *LWV* action, they directly and repeatedly aligned themselves with the *LWV* Parties in that action in their effort to invalidate the 2011 Plan.

150886.00601/106664905v.1

For example, Defendants (and their counsel Mark Aronchick), who has now entered his appearance in this action, argued to the Pennsylvania Supreme Court that the 2011 Plan must be deemed unconstitutional. *See* Video of Pennsylvania Supreme Court Oral Argument, dated January 17, 2018 (https://pcntv.com/pacourts/, beginning at 35:00). Of course, Defendants' alignment with the *LWV* Parties before the Pennsylvania Supreme Court was not limited to Mr. Aronchick's strident pronouncements during oral argument. On the contrary, Defendants' pre-argument submissions to that court advanced identical sentiments. *See* January 10, 2018 Supreme Court Brief at 1, a copy of which is attached hereto as **Exhibit A** ("The evidence weighed overwhelmingly in favor of the conclusion that the Congressional map put in place in 2011 (the '2011 Plan') is not only a partisan gerrymander, but is an extreme outlier on the scale of partisan gerrymanders, one of the most excessively partisan maps that the nation has ever seen."). And similar sentiments were advanced in Defendants' submission to the U.S. Supreme Court opposing a stay of the Pennsylvania Supreme Court's PCO. *See* February 2, 2018 Response In Opposition To Emergency Applications For Stay, at 4, attached hereto as **Exhibit B** ("In short, this is a dispute about the meaning of the state constitution that was appropriately and finally resolved in the Pennsylvania Supreme Court … Applicants' request should be denied."). Thus, it

150886.00601/106664905v.1

is not surprising that the *LWV* Parties readily admit that they do not question the Defendants' "interest in defending this lawsuit." Brief at 15.

But, Defendants' interest and efforts in dislodging the 2011 Plan are not relegated to actions taken in connection with the *LWV* action. On the contrary, in *Agre* Mr. Aronchick delivered an impassioned closing statement denouncing the 2011 Plan, and strongly urging that court to declare the Plan unconstitutional; Defendants reiterated this argument in their post-trial submission. *See* December 15, 2017 Post-Trial Brief at 3, attached hereto as **Exhibit C** ("Plaintiffs' experts made clear that neutral principles of redistricting—contiguity, compactness, and minimizing splits of political subdivisions—could not justify the shapes of the districts created by the 2011 Plan because those shapes consistently violated those very principles, while at the same time achieving partisan political effects.").

Defendants' statements and actions in *Diamond* are completely in accord. For instance, in *Diamond* Defendants' opposed a motion to dismiss filed by certain legislative defendants therein—a bizarre, if bald, action by a "co-defendant" to protect the *Diamond* plaintiffs' efforts to have the 2011 Plan declared unconstitutional. *See Diamond v. Torres*, No. 17-5054 (E.D. Pa. Jan. 23, 2018) (ECF 83-1 at 6). In fact, so aligned were Defendants' positions with those advanced by the *Diamond* plaintiffs, that those legislative defendants filed a motion to realign the parties in that action such that Defendants would be deemed

party-plaintiffs.  *See* ECF 83; *see also* ECF 83-1 at 6-10 (identifying instances from the *LWV* action, *Agre* and *Diamond* where Defendants aligned themselves with parties seeking to invalidate the 2011 Plan).  In short, Defendants' interests in this action are identical to those of the *LWV* Parties—invalidation of the 2011 Plan and implementation of the Court Drawn Plan.[10]

Separately, the *LWV* Parties argue that this Court should permit their intervention because they possess some peculiar and undefined "institutional knowledge."  *See* Brief at 13, 15.  But, in advancing this contention, the *LWV* Parties ignore that Defendants too were parties to the *LWV* action, engaging in pre-trial and post-trial activities and otherwise fully supporting the *LWV* Parties before the Pennsylvania and U.S. Supreme Courts.  Likewise, they ignore that the claims presented in this action have nothing to do with the evidence or experts that the *LWV* Parties presented in the *LWV* action.  *See* Brief at 13.[11]

---

[10] The *LWV* Parties' citation to *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 948 (3d Cir. 2012) for the proposition that "the Third Circuit has allowed a non-governmental party to intervene as of right where 'an agency's views' as a governmental actor are necessarily distinct from those of a 'proposed intervenor whose interest is personal to it'" (Brief at 14) is misplaced, because *Benjamin* involved potentially diverging interests in a class action settlement for mentally challenged plaintiffs.  *Id.* at 948.  No such divergent interests between Defendants and the *LWV* Parties are present here.

[11] The import of the *LWV* Parties' "institutional knowledge" is further belied by their proposed Answer affixed to their Motion.  This Answer confirmed that the *LWV* Parties are voters, not experts versed in the legal issues advanced in this action.  Indeed, given that Plaintiffs' complaint and motion deal primarily with

14

Lastly, the *LWV* Parties suggest that Defendants may have too much work to adequately represent their interests. *See* Brief at 14. But the *LWV* Parties have not submitted any evidence even suggesting that this might be so. And this is likely for good reason; in all likelihood, the evidence is to the contrary. Defendants in this action have made copious filings in the *LWV*, *Agre* and *Diamond* actions, never once missing a court-ordered deadline or an opportunity to be heard. Moreover, Defendants participated fully in the *LWV* and *Agre* trials, never once complaining that their resources were in any way inadequate. Of course, Defendants, high ranking members of the Executive Branch of the Pennsylvania Government, surely have all of the resources the Executive Branch has at its disposal. In short, any suggestion by the *LWV* Parties' that Defendants lacked resources to defend the Pennsylvania Supreme Court's actions are nothing more than rote speculation.[12]

---

questions of law, the *LWV* Parties' claims of relevant, albeit unidentified, "institutional knowledge" ring hollow.

[12] *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 (2010) is distinguishable. *See id.* at 538-539 (union member allowed to intervene where union Secretary, who was prosecuting the union member's complaint, had potentially conflicting duties, and union member might not be properly represented). *See also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3rd Cir. 1998) ("But the presumption notwithstanding, when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light."). But where, as here, the *LWV* Parties include a public interest group whose position "closely parallels" that of the government

150886.00601/106664905v.1

In sum, the LWV Parties have not satisfied the fourth requirement of intervention as of right.

**D.** **This Court Should Deny The *LWV* Parties' Request For Permissive Intervention.**

This Court may grant permissive intervention where the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." *See* Fed. R. Civ. P. 24(b)(1)(B). But, because the factors considered on a motion for permissive intervention are similar to those considered for a motion for intervention as a right, a finding that a party is not entitled to intervene as a right almost always results in a denial of permissive intervention. *Brody*, 957 F.2d at 1124.

Here, the *LWV* Parties do not have a separate claim or defense that shares with the main action a common question of law or fact. On the contrary, the *LWV* Parties' position is identical to Defendants—uphold the invalidation of the 2011 Plan and the implementation of the Court Drawn Plan. For the same reasons that the *LWV* Parties should be denied intervention as of right, this Court should deny permissive intervention.

The *LWV* Parties suggest that they should be granted permissive intervention because they purportedly "bring a perspective that differs from that of the other

___

Defendants, the "would-be intervenor [must make] a strong showing of inadequate representation." *Id*. The *LWV* Parties cannot make this showing.

parties, and may clarify issues that the other parties could overlook." Brief at 16. But even assuming that this was a viable basis to support permissive intervention (and it is not), the *LWV* Parties' Brief is devoid of any indication as to what this "perspective" is. For example, the *LWV* parties do not identify what unique perspective, if any, they may have concerning Pennsylvania's electoral process. Brief at 16-17. Of course, the reason for this omission is plain: Defendants are mandated to ensure implementation of a smooth election process, and are surely more than capable of providing adequate insights as to the impact of granting Plaintiffs' requested relief.

Finally, the *LWV* Parties' proposed submission concerning whether this Court should "upend the Pennsylvania Supreme Court's judgment …" would be, at best, redundant. Brief at 16-17. Surely, Defendants, those individuals constitutionally entrusted with administering Pennsylvania's 2011 Congressional elections, are well positioned to explain to the Court the effects of stunting the use of the Court Drawn Plan. [13]

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the *LWV* Parties' Motion should be denied.

---

[13] The U.S. Supreme Court has ruled that it is entirely appropriate for courts to permit elections to proceed under a map the court declared unconstitutional where an election is looming and the state's election machinery is already in progress. This is to prevent making unreasonable and embarrassing demands on a state legislature and otherwise afford the legislature adequate time to act. *See Reynolds v. Sims*, 377 U.S. 533, 585-87 (1964).

February 27, 2018

Respectfully submitted,

/s/ Brian S. Paszamant
Brian S. Paszamant (PA 78410)
Jason A. Snyderman (PA 80239)
BLANK ROME LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Ph: (215) 569-5791
Fax: (215) 832-5791
Email: paszamant@blankrome.com
snyderman@blankrome.com

Matthew H. Haverstick
  (PA 85072)
Mark E. Seiberling (PA 91256)
Shohin H. Vance (PA 323551)
KLEINBARD LLC
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, PA 19103
Ph: (215) 568-2000
Email: mhaverstick@kleinbard.com
mseiberling@kleinbard.com
svance@kleinbard.com

Jason Torchinsky (*pro hac vice application pending*)
Shawn Sheehy (*pro hac vice application pending*)
HOLTZMAN VOGEL JOSEFIAK
TORCHINSKY PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
Ph: (540) 341-8808
Fax: (540) 341-8809
Email: jtorchinsky@hvjt.law
ssheehy@hvjt.law

Joshua J. Voss (PA 306853)
KLEINBARD LLC
115 State Street, 2nd Floor
Harrisburg, PA 17101
Ph: (717) 836-7492
Fax: (215) 568-0140
Email: jvoss@kleinbard.com

*Counsel for Federal Plaintiffs*

*Counsel for State Plaintiffs*

150886.00601/106664905v.1

# WORD COUNT CERTIFICATION

I hereby certify that the foregoing brief complies with the word-count limit set forth in LR 7.8(b). Based on the word count feature of the word-processing system used to prepare this brief, I certify that it contains 4482 words, exclusive of the cover pages, tables, and the signature block.

Dated: February 27, 2018                    /s/ Brian Paszamant