## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACOB CORMAN, in his official capacity as Majority Leader of the Pennsylvania Senate, MICHAEL FOLMER, in his official capacity as Chairman of the Pennsylvania Senate State Government Committee, LOU BARLETTA, RYAN COSTELLO, MIKE KELLY, TOM MARINO, SCOTT PERRY, KEITH ROTHFUS, LLOYD SMUCKER, and GLENN THOMPSON, | : : : : : : : : : : : : | CIVIL ACTION<br><br>No. 1:18-cv-00443-CCC-KAJ-JBS<br><br>Three-Judge Panel<br>Pursuant to 28 U.S.C. § 2284(a)<br><br>Circuit Judge Kent Jordan<br>Chief Judge Christopher Conner<br>District Judge Jerome Simandle |
| Plaintiffs,<br><br>v.<br><br>ROBERT TORRES, in his official capacity as Acting Secretary of the Commonwealth; JONATHAN M. MARKS, in his official capacity as Commissioner of the Bureau of Commissions, Elections, and Legislation,<br><br>Defendants. | : : : : : : : : : : : : : : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

BACKGROUND .............................................................................................3

LEGAL STANDARD .....................................................................................6

STATEMENT OF QUESTIONS PRESENTED ........................................6

ARGUMENT ..................................................................................................7

    I.      PLAINTIFFS MAY NOT USE A FEDERAL SUIT TO
           COLLATERALLY ATTACK THE PENNSYLVANIA
           SUPREME COURT'S JUDGMENT ....................................8

           A.     This Court Should Dismiss The Suit Under The *Rooker-
                   Feldman* Doctrine. ....................................................8

           B.     This Court Should Abstain Under *Colorado River*. .................11

           C.     This Case Should Be Dismissed Because Plaintiffs Are
                   Precluded From Relitigating The Issues Resolved In The
                   State Proceedings. ....................................................14

    II.     PLAINTIFFS LACK STANDING. ....................................16

    III.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER
           THE ELECTIONS CLAUSE. ..........................................20

           A.     The Pennsylvania Supreme Court Did Not Usurp
                   Legislative Authority. ...............................................20

           B.     The Pennsylvania Supreme Court's Remedial Order Did
                   Not Otherwise Violate the Elections Clause. ...........................24

CONCLUSION ..............................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Abrams v. Johnson*,
521 U.S. 74 (1997)..........................................................................25

*Agre v. Wolf*,
No. 17-4392, 2018 WL 351603 (E.D. Pa. Jan. 10, 2018),
*appeal docketed*, No. 18-1135 (3d Cir. Jan. 24, 2018)................................22, 25

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*,
135 S. Ct. 2652 (2015).................................................................*passim*

*Bush v. Gore*,
531 U.S. 98 (2000)..........................................................................23

*Chase Manhattan Bank, N.A. v. Celotex Corp.*,
56 F.3d 343 (2d Cir. 1995) .................................................................10

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)..............................................................12, 13, 14

*Common Cause of Pennsylvania v. Pennsylvania*,
558 F.3d 249 (3d Cir. 2009) ...............................................................16

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005)......................................................................9, 11

*Finkelman v. Nat'l Football League*,
810 F.3d 187 (3d Cir. 2016) .................................................................9

*Florida v. Powell*,
559 U.S. 50 (2010)..........................................................................22

*Goldstein v. Ahrens*,
108 A.2d 693 (Pa. 1954)..................................................................14

*Goode v. City of Philadelphia*,
539 F.3d 311 (3d Cir. 2008) ...............................................................16

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,
   615 F.3d 159 (3d Cir. 2010) ...................................................9

*Growe v. Emison*,
   507 U.S. 25 (1993)......................................................13, 14, 21, 25

*Hoblock v. Albany Cty. Bd. of Elections*,
   422 F.3d 77 (2d Cir. 2005) .................................................10

*Ingersoll-Rand Fin. Corp. v. Callison*,
   844 F.2d 133 (3d Cir. 1988) ...............................................14

*Lance v. Coffman*,
   549 U.S. 437 (2007)............................................................17

*Lance v. Dennis*,
   546 U.S. 459 (2006)......................................................10, 11

*Larios v. Cox*,
   305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004),
   *aff'd* 542 U.S. 947 (2004) ..................................................25

*Lawyer v. Dep't of Justice*,
   521 U.S. 567 (1997)............................................................24

*League of United Latin Am. Citizens v. Perry*,
   548 U.S. 399 (2006)............................................................25

*Loeper v. Mitchell*,
   506 U.S. 828 (1992)............................................................25

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)............................................................19

*McCulloch v. Maryland*,
   17 U.S. (4 Wheat.) 316 (1819) ...........................................21

*Mellow v. Mitchell*,
   607 A.2d 204 (Pa. 1992)................................................21, 25

*Moore v. U.S. House of Representatives,*
    733 F.2d 946 (D.C. Cir. 1984) ............................................................. 18

*Morgan Stanley Dean Witter Reynolds, Inc. v. Gekas,*
    309 F. Supp. 2d 652 (M.D. Pa. 2004) ................................................. 13

*Mullaney v. Wilbur,*
    421 U.S. 684 (1975) ............................................................................... 7

*Murdock v. City of Memphis,*
    87 U.S. (20 Wall.) 590 (1874) ........................................................ 22, 27

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.,*
    571 F.3d 299 (3d Cir. 2009) ............................................................... 12

*Ohio ex rel. Davis v. Hildebrant,*
    241 U.S. 565 (1916) ............................................................................ 22

*Parsons Steel, Inc. v. First Alabama Bank,*
    474 U.S. 518 (1986) ............................................................................ 14

*Pennzoil Co. v. Texaco, Inc.,*
    481 U.S. 1 (1987) ............................................................................... 14

*Raines v. Byrd,*
    521 U.S. 811 (1997) ...................................................................... 17, 18

*Reilly v. Ceridian Corp.,*
    664 F.3d 38 (3d Cir. 2011) ................................................................... 6

*Reynolds v. Sims,*
    377 U.S. 533 (1964) ............................................................................ 22

*Rue v. K-Mart Corp.,*
    713 A.2d 82 (Pa. 1998) .................................................................. 14, 15

*Russell v. DeJongh,*
    491 F.3d 130 (3d Cir. 2007) ............................................................... 16

*Ryan v. Johnson*,
   115 F.3d 193 (3rd Cir. 1997) .................................................13

*Scherfen v. U.S. Dep't of Homeland Sec.*,
   No. 3:CV-08-1554, 2010 WL 456784 (M.D. Pa. Feb. 2, 2010)........................10

*Shaffer v. Smith*,
   673 A.2d 872 (Pa. 1996) .....................................................15

*Sica v. City of Philadelphia*,
   465 A.2d 91 (1983) ..........................................................15

*Smiley v. Holm*,
   285 U.S. 355 (1932) .........................................................23

*Sprint Comm'ns, Inc. v. Jacobs*,
   134 S. Ct. 584 (2013) .......................................................14

*In re Stevenson*,
   40 A.3d 1212 (Pa. 2012) .....................................................15

*Stevenson v. Silverman*,
   208 A.2d 786 (Pa. 1965) .....................................................15

*Vieth v. Jubelirer*,
   541 U.S. 267 (2004) .........................................................25

*Warth v. Seldin*,
   422 U.S. 490 (1975) .........................................................18

*White v. Weiser*,
   412 U.S. 783 (1973) .........................................................25

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) .........................................................14

*Wittman v. Personhuballah*,
   136 S. Ct. 1732 (2016) ......................................................18

**CONSTITUTIONAL PROVISION:**

Pa. Const. art. IV, § 15 ............................................................28

**STATUTE:**

28 U.S.C. § 1257 .......................................................................9

**RULES:**

Fed. R. Civ. P. 12(b)(1) ...........................................................6, 9

Fed. R. Civ. P. 12(b)(6) .....................................................6, 14, 15

**OTHER AUTHORITIES:**

*Scarnati, Turzai Issue Statement PA Supreme Court's Gerrymandered Congressional Map*, Senator Joe Scarnati (Feb. 19, 2018), *available at* http://www.senatorscarnati.com/2018/02/19/scarnati-turzai-issue-statement-pa-supreme-courts-gerrymandered-congressional-map/ ............. 10-11

# INTRODUCTION

On January 22, 2018, the Pennsylvania Supreme Court issued an order declaring that the 2011 Pennsylvania Congressional Redistricting Act "clearly, plainly and palpably violates the Constitution of the Commonwealth of Pennsylvania, and, on that sole basis" the court invalidated "it as unconstitutional." The order also set out the appropriate remedial process for the violation, which included an 18-day period for the Pennsylvania General Assembly to draw a new, constitutional map based on specific guidance provided by the Pennsylvania Supreme Court.

The leadership in the General Assembly did not, however, get to work on a new map, in a good faith attempt to comply with this order. Rather, four days later, the state legislative defendants in the state court action requested that the United States Supreme Court issue an emergency stay, based on the novel assertion that the Elections Clause of the United States Constitution permits federal courts to review a state high court's interpretation of a state constitution and to second guess a state supreme court's determination of the appropriate remedial process.

Justice Alito denied that stay application on February 5, without even referring the request to the full Court. In doing so, he implicitly rejected the remarkable proposition that federal courts may use the Elections Clause as an excuse to interfere with a State's fundamental right to have its own court determine

the meaning of its own constitution or to thwart the state court's remedy for a violation of the state constitution.

Undaunted, the proponents of the unconstitutional 2011 redistricting plan have now reraised the same Elections Clause challenge in two separate federal forums: They filed a second, duplicative stay application in the United States Supreme Court, and they initiated this suit in federal district court.

Given this history, it is unsurprising that multiple barriers stand in the way of this Court's review: The *Rooker-Feldman* doctrine deprives federal courts of subject-matter jurisdiction over suits, like this one, that seek to undo state court judgments. Abstention is also warranted in light of the ongoing proceedings before the United States and Pennsylvania Supreme Courts. And principles of preclusion bar reopening issues decided in the state court.

Moreover, even if Plaintiffs were not barred from pursuing a collateral challenge to the Pennsylvania Supreme Court's orders, they lack standing to maintain this suit. The state plaintiffs assert no personal injury at all, and the congressional plaintiffs have not articulated a cognizable injury that is fairly traceable to the Pennsylvania Supreme Court's order.

In any event, Plaintiffs' claims are meritless. This Court has no power to determine whether the Pennsylvania Supreme Court correctly interpreted its remedial authority under state law. And the Elections Clause does not impose any

federal requirement that state courts give legislatures a particular amount of time to respond to a constitutional violation before crafting a remedy.  Indeed, federal precedent confirms the lawfulness of the state court's remedy because the Supreme Court itself has approved of judicially drawn maps produced on similar timetables.

This Court should recognize this lawsuit for what it is:  a transparent attempt to relitigate a state law issue that has already been settled by the Supreme Court of Pennsylvania.  The Complaint should be dismissed.

## BACKGROUND

This suit follows on the heels of a still-ongoing Pennsylvania state court suit. In June 2017, the League of Women Voters and a group of Pennsylvania voters ("Challengers") filed suit in the Pennsylvania Commonwealth Court, claiming that the Pennsylvania Congressional Redistricting Act of 2011 ("2011 Plan") violated several provisions of the Pennsylvania Constitution.  Compl. Ex. F at 2-3.  They named as defendants, among others, the General Assembly, Speaker of the Pennsylvania House of Representatives Michael C. Turzai, Pennsylvania Senate President Pro Tempore Joseph B. Scarnati, III, and the two defendants in this case. *Id.* at 3.

The state-court suit proceeded on an expedited schedule.  After the Commonwealth Court indicated it would stay the suit, the Challengers asked the Pennsylvania Supreme Court to exercise its plenary jurisdiction, expedite

resolution of the case, and rule in time for the 2018 elections. It did, ordering the Commonwealth Court to create an evidentiary record and submit proposed findings of fact and conclusions of law by December 31, 2017, Compl. Ex. A at 2, and then promptly reviewing the case itself.

On January 22, 2018, the Pennsylvania Supreme Court issued a *per curiam* Order, holding that the 2011 Plan "clearly, plainly and palpably violates the Constitution of the Commonwealth of Pennsylvania, and, on that sole basis, we hereby strike it as unconstitutional." Compl. Ex. B at 2. It enjoined use of the 2011 Plan in the May 2018 primary elections, set a February 9 deadline for the General Assembly to pass a replacement districting plan and a February 15 deadline for the Governor to decide whether or not to approve it, and gave all parties an opportunity to submit proposed remedial plans. *Id.* at 2-3.

The Court explained that "to comply with th[e] Order, any congressional districting plan shall consist of: congressional districts composed of compact and contiguous territory; as nearly equal in population as practicable; and which do not divide any county, city, incorporated town, borough, township, or ward, except where necessary to ensure equality of population." *Id.* at 3. In a February 7 opinion, the Court "explicat[ed] [its] rationale" but did not "in any way alter, the mandate set forth in [the] Order." Compl. Ex. F at 4.

Afterwards, the legislative defendants sought to block the Order. They sought a stay from the Pennsylvania Supreme Court, which that court denied on January 25. And they sought a stay from the U.S. Supreme Court, which Justice Alito denied on February 5, without referring the application to the full Court. During this time, the General Assembly did not seek an extension of the February 9 deadline. Compl. Ex. J at 5.

When "[t]he General Assembly failed to pass legislation for the Governor's approval," it became "the judiciary's duty to fashion an appropriate remedial districting plan." *Id.* On February 19, the Pennsylvania Supreme Court adopted a remedial plan prepared by Professor Nathaniel Persily, who had been appointed as an advisor to assist the Court "if necessary" on January 26. *Id.* at 4.

The legislative defendants again sought a stay from the Pennsylvania Supreme Court on February 22, which was denied five days later. On February 27, the legislative defendants *again* asked the United States Supreme Court to intervene and impose a stay. That request remains pending as of this filing.

The same day the legislative defendants sought their second stay from the Pennsylvania Supreme Court, Plaintiffs filed this suit. Plaintiffs are two of the legislative defendants' colleagues—Pennsylvania Senate Majority Leader Jacob Corman and Pennsylvania Senate State Government Committee Chairman Michael Folmer ("State Plaintiffs")—and eight U.S. House of Representative members who

represent Pennsylvania districts ("Congressional Plaintiffs").  Echoing the stay applications before the U.S. Supreme Court, Plaintiffs allege that the Pennsylvania Supreme Court's order violates the Elections Clause.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes defendants to move to dismiss for "lack of subject-matter jurisdiction," and Rule 12(b)(6) authorizes defendants to move to dismiss for "failure to state a claim upon which relief can be granted."  In ruling on a motion to dismiss under Rule 12(b)(1) or 12(b)(6), this Court "accept[s] as true all well-pleaded allegations and construe[s] the complaint in the light most favorable to the non-moving party."  *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011).

## STATEMENT OF QUESTIONS PRESENTED

1.      Does the *Rooker-Feldman* doctrine deprive this Court of subject-matter jurisdiction over a lawsuit that seeks to undo a judgment of the Supreme Court of Pennsylvania?

2.      Should this Court abstain in favor of the parallel proceedings in the Supreme Court of Pennsylvania and the United States Supreme Court?

3.      Are Plaintiffs precluded from relitigating the Elections Clause issue actually litigated and decided in the Pennsylvania Supreme Court?

4.    Have Plaintiffs failed to establish Article III standing by failing to articulate a cognizable, particularized injury that is fairly traceable to the alleged Elections Clause violations?

5.    Does the Elections Clause authorize this Court to review an otherwise unreviewable question of state law decided by the Pennsylvania Supreme Court?

6.    Did the Elections Clause require the Pennsylvania Supreme Court to give the Pennsylvania General Assembly a particular amount of time to respond to the state constitutional violation it found and, if so, did the court comply with that obligation by giving the legislature nearly three weeks to respond?

## ARGUMENT

It is a bedrock principle of federalism that "state courts are the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  In particular, "[i]t is fundamental . . . that state courts be left free and unfettered by us in interpreting their state constitutions." *Florida v. Powell*, 559 U.S. 50, 56 (2010) (internal quotation marks omitted).  Yet Plaintiffs ask this Court to sit in judgment on the propriety of the Pennsylvania Supreme Court's determination that a Pennsylvania redistricting law violates the Pennsylvania Constitution, and they ask this Court to second guess the Pennsylvania Supreme Court's remedy for this state constitutional violation.

It is plain that neither of those requests may be granted. Indeed, this suit is barred many times over: The *Rooker-Feldman* and *Colorado River* abstention doctrines both require dismissal, as do basic principles of *res judicata* and Article III standing. And even if Plaintiffs could overcome these threshold obstacles, their case fares just as poorly on the merits. Accordingly, Plaintiffs' claims should be dismissed.[1]

## I. PLAINTIFFS MAY NOT USE A FEDERAL SUIT TO COLLATERALLY ATTACK THE PENNSYLVANIA SUPREME COURT'S JUDGMENT.

Black letter law dictates that federal courts should not sit in judgment of the decisions of state courts, nor should they deprive those state court judgments of their appropriate preclusive effect. Multiple doctrines bar that result in this case.

### A. This Court Should Dismiss The Suit Under The *Rooker-Feldman* Doctrine.

To begin, the *Rooker-Feldman* doctrine bars this suit. Under the *Rooker-Feldman* doctrine, suits that "essentially invite[] federal courts of first instance to review and reverse unfavorable state-court judgments" must be "dismissed for

---

[1] In the time since the Court granted the Motion to Intervene of Petitioners in the state court litigation, Defendants and Intervenors have worked together to eliminate unnecessary duplication from the parties' briefs. Defendants are, however, conscious of the need to avoid any suggestion from Plaintiffs that, by not raising issues in their briefs, they have waived certain issues before this Court or on appeal. Accordingly, in the interest of ensuring that issues are preserved, Defendants have raised some arguments that may also appear in the briefs filed by Intervenors.

want of subject-matter jurisdiction." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-284 (2005); *see* 28 U.S.C. § 1257. This is a textbook case for the application of the *Rooker-Feldman* doctrine: Plaintiffs are clearly using this suit as a vehicle to collaterally attack the judgment of the Pennsylvania Supreme Court. This Court should therefore dismiss the case under Rule 12(b)(1).

The Third Circuit has identified four requirements for the *Rooker-Feldman* doctrine: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil*, 544 U.S. at 284). Each of these requirements is apparent on the face of the Complaint. The plaintiffs are state legislators and congressional candidates whose counterparts lost in state court; Plaintiffs' purported injuries were allegedly caused by the Pennsylvania Supreme Court's judgment putting in place the new electoral map; that court's judgment was rendered before this suit was filed; and plaintiffs are asking this Court to undo the Pennsylvania Supreme Court's judgment by setting aside the new map. *See* Compl. ¶¶ 1, 4, 5; PI Mot. at 1-2.

To be sure, Plaintiffs have attempted to avoid the application of the doctrine by ensuring that the names of the legislators and congressional incumbents who

appear as plaintiffs in this case are different from the names of those who appear as

defendants in the Pennsylvania state court suit.  But that naked ploy fails:  *Rooker-*

*Feldman* may apply "when the interests involved in the prior litigation are virtually

identical to those in later litigation," *Hoblock v. Albany Cty. Bd. of Elections*,

422 F.3d 77, 90 (2d Cir. 2005) (quoting *Chase Manhattan Bank, N.A. v. Celotex*

*Corp.*, 56 F.3d 343, 345 (2d Cir. 1995)), or when the state court litigants "in fact

are controlling the . . . federal suit." *Id.* at 91.  And, while the Supreme Court has

tightened the reach of the doctrine in recent years, it has left open the possibility

that in certain "limited" circumstances "*Rooker-Feldman* may be applied against a

party not named in an earlier state proceeding." *See Lance v. Dennis*, 546 U.S.

459, 466 n.2 (2006) (per curiam).

This is clearly one of those circumstances:  The defendants in the

Pennsylvania state court case have repeatedly and publicly made clear that they are

the real plaintiffs in this action, whatever the caption may say.[2]  For example,

Senator Scarnati, a named defendant in the state court suit, issued a press release,

referring to *this* case, which said: "We anticipate further action in federal court."[3]

---

[2] "Courts, of course, may consider matters outside the complaint when addressing a
Rule 12(b) (1) motion addressing subject matter jurisdiction." *Scherfen v. U.S.*
*Dep't of Homeland Sec.*, No. 3:CV-08-1554, 2010 WL 456784, at *10 (M.D. Pa.
Feb. 2, 2010).

[3] *Scarnati, Turzai Issue Statement PA Supreme Court's Gerrymandered*
*Congressional Map*, Senator Joe Scarnati (Feb. 19, 2018), *available at*

And in a February 21 email to Republican House members, Speaker Turzai, another state court defendant, announced that "House and Senate Republican leadership will be initiating action in the Federal Court in the Middle District of Pennsylvania."[4] The next day this action was filed. Plaintiffs should not be permitted to manipulate federal jurisdiction in this way.

At a bare minimum, the *Rooker-Feldman* doctrine necessitates the dismissal of the claims brought by the State Plaintiffs. Both the General Assembly itself and the State Senate President Pro Tempore, in his official capacity, were parties to the state court litigation. *See* Compl. Ex. A at 1. State Plaintiffs, who bring this action in their official capacities, thus participated in that litigation through their direct legal representatives, and indeed were members of the very body subject to the Pennsylvania Supreme Court's remedial orders. *See* Compl. Ex. B. at 3; *Lance*, 546 U.S. at 466 n.2. They should not now be allowed to ask this Court to "review and reverse" the "unfavorable state-court judgment[]" that resulted from that litigation. *Exxon Mobil*, 544 U.S. at 283-284.

### B. This Court Should Abstain Under *Colorado River*.

If *Rooker-Feldman* does not bar this suit, then *Colorado River* abstention plainly should. "The *Colorado River* doctrine allows a federal court to abstain,

---

http://www.senatorscarnati.com/2018/02/19/scarnati-turzai-issue-statement-pa-supreme-courts-gerrymandered-congressional-map/.

[4] Jonathan Lai (@Elaijuh), Twitter (Feb. 21, 2018, 11:08 AM), *available at* https://twitter.com/Elaijuh/status/966389198923157506

either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009); *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). *Colorado River* abstention is "a two-part inquiry." *Nationwide*, 571 F.3d at 307. "The initial question is whether there is a parallel state proceeding that raises substantially identical claims and nearly identical allegations and issues." *Id.* (internal quotation marks and alterations omitted). "If the proceedings are parallel, courts then look to a multi-factor test to determine whether 'extraordinary circumstances' meriting abstention are present." *Id.* at 307-308.

Here, the "parallel state proceeding[s]" clearly "raise[] substantially identical claims." *Id.* at 307 (internal quotation marks omitted). The Pennsylvania Supreme Court expressly rejected Plaintiffs' Elections Clause challenge, Compl. Ex. F at 132-137 & n.79, and defendants have sought a stay of that state judgment from the U.S. Supreme Court, pending their request for certiorari review. The certiorari process often takes months, and if the Supreme Court grants review, the parallel proceedings may remain pending for more than a year.

The *Colorado River* factors also clearly militate in favor of abstention. *See Nationwide*, 571 F.3d at 307-308. First, "the inconvenience of the federal forum": At bottom, this dispute is grounded on state constitutional law and the remedial

powers of state courts, and it is proper that it be adjudicated in state proceedings. *Colorado River*, 424 U.S. at 818. Second, "the desirability of avoiding piecemeal litigation": There is no dispute that a certiorari petition presenting the *precise* issues in this case will be filed soon by Plaintiffs' surrogates in the state action. There is also "a strong federal policy against piecemeal litigation" in the context of this suit, *Ryan v. Johnson*, 115 F.3d 193, 197 (3rd Cir. 1997), because "*both* state branches"—judiciary and legislature—are "prefer[able] . . . to federal courts as agents of apportionment," *Growe v. Emison*, 507 U.S. 25, 34 (1993).

Third, "the order in which jurisdiction was obtained" weighs heavily in favor of abstention, as the state case was filed long before this one. *Colorado River*, 424 U.S. at 818. And finally, the "Plaintiff[s'] actions [in filing this suit] raise the specter of impermissible forum shopping"—another factor this Court has weighed in applying *Colorado River*—because Plaintiffs appear to be taking a second bite at the apple with their Elections Clause claims, out of a concern that they will lose in the United States Supreme Court. *Morgan Stanley Dean Witter Reynolds, Inc. v. Gekas*, 309 F. Supp. 2d 652, 658 (M.D. Pa. 2004). This Court should thus deny review under *Colorado River*, and dismiss Plaintiffs' complaint.

*See Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 137 (3d Cir. 1988)

(affirming *Colorado River* abstention under a weighing of its factors).[5]

### C. This Case Should Be Dismissed Because Plaintiffs Are Precluded From Relitigating The Issues Resolved In The State Proceedings.

If the abstention doctrine does not dispose of this case, *res judicata*

principles demand its dismissal under Rule 12(b)(6) because this is "palpably an

attempt to relitigate a controversy which had been fully resolved." *Goldstein v.*

*Ahrens*, 108 A.2d 693, 695 (Pa. 1954). Federal courts must "give the same

preclusive effect to a state-court judgment as another court of that State would

give." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986). As

explained in greater detail in Intervenors' Motion to Dismiss, all four of the

elements of issue preclusion required by Pennsylvania law are clearly present here.

*See Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998).

First, the Elections Clause "issues decided" by the Pennsylvania Supreme

Court are "identical to" the ones Plaintiffs have presented in this action. *Id.*; *see*

Compl. Ex. F at 131-137. Second, the state court action resulted in a "final

---

[5] As Intervenors explain more fully, abstention is also warranted under *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987), because this lawsuit implicates Pennsylvania's "interest in enforcing the orders and judgments of its courts." *Sprint Comm'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). When a state court adopts a redistricting plan, "elementary principles of federalism and comity . . . obligate[] [a] federal court to give that judgment *legal effect*." *Growe*, 507 U.S. at 35-36 (citation omitted). And, at the very least, this Court should stay its review of Plaintiffs' claims pending the resolution of the Supreme Court proceedings. *See Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

judgment on the merits." *Rue*, 713 A.2d at 84; *Shaffer v. Smith*, 673 A.2d 872, 874-875 (Pa. 1996) (possibility of appeal does not deprive judgment of final effect). Third, all Plaintiffs here are "in privity with a party to the prior action" as a matter of Pennsylvania law. *Rue*, 713 A.2d at 84. As the Intervenors explain, the concept of "privity" in Pennsylvania is interpreted to ensure that litigants cannot evade the preclusive effects of judgments "by a shuffling of plaintiffs on the record." *Stevenson v. Silverman*, 208 A.2d 786, 788 (Pa. 1965) (internal quotation marks omitted); *see also In re Stevenson*, 40 A.3d 1212 (Pa. 2012) (according preclusive effect to injunction in election case even though neither party was a party to prior proceeding); *Sica v. City of Philadelphia*, 465 A.2d 91, 99-101 (Pa. Commw. Ct. 1983) ("judgment in one taxpayer's suit is binding upon a second taxpayer's suit involving the same subject matter"). Fourth and finally, there is no reasonable dispute that the "part[ies] against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action." *Rue*, 713 A.2d at 84. The House Speaker and Senate President Pro Tempore were even represented by the same counsel that represents Plaintiffs here.

In sum, all four requirements of issue preclusion are met, and this Court should dismiss the case pursuant to Rule 12(b)(6).

## II.  PLAINTIFFS LACK STANDING.

An additional obstacle stops Plaintiffs' claims at the threshold:  Neither the State Plaintiffs, nor the Congressional Plaintiffs have Article III standing to bring this suit.

To establish standing to sue, a plaintiff "must show . . . injury in the form of invasion of a legally protected interest that is concrete and particularized and actual or imminent" that is "fairly traceable to the challenged action and redressable by a favorable ruling." *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015) (citations and internal quotation marks omitted).  Absent that showing, a federal court lacks "subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009).

The State Plaintiffs lack standing to raise Counts I and II of the Complaint because they have not alleged an injury particularized to them.  The Complaint does not state how the January 22 Order injured these plaintiffs.  They may claim to have standing simply as members of the legislature that enacted the 2011 Plan.  If so, they are out of luck.  "[O]nce a bill has become law, a legislator's interest in seeing that the law is followed is no different from a private citizen's general interest in proper government." *Goode v. City of Philadelphia*, 539 F.3d 311, 319 (3d Cir. 2008) (quoting *Russell v. DeJongh*, 491 F.3d 130, 135 (3d Cir. 2007)).

And the Supreme Court has squarely held that a private citizen does not have standing to bring an Elections Clause challenge of the type that the Plaintiffs press here. *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam).

Alternatively, the State Plaintiffs may be attempting to claim standing based on an injury to their role as legislators, that is, to their ability to enact redistricting legislation. Compl. ¶¶ 11-12, 103, 112. This claim fails too because it is one "of institutional injury (the diminution of legislative power), which necessarily damages all Members of [the Legislature] equally." *Raines v. Byrd*, 521 U.S. 811, 821 (1997). As a result, "these individual members . . . do not have a sufficient 'personal stake' in this dispute and have not alleged a sufficiently concrete injury to have established Article III standing." *Id.* at 830. *See also Arizona Indep. Redistricting Comm'n*, 135 S. Ct. at 2664 (holding that the legislature could pursue Elections Clause challenge because, unlike individual legislators, it was "an institutional plaintiff asserting an institutional injury, and it commenced this action after authorizing votes in both of its chambers") (internal quotation marks omitted).

The Congressional Plaintiffs lack standing to raise Counts I and II for a different reason: They have not alleged an injury to a legally protected interest. These plaintiffs allege that the plan adopted in the February 19 Order altered their districts. Seven allege that they spent campaign funds to reach voters who now

reside outside of their districts, and five allege that they lost their incumbency advantage.[6]  Compl. ¶¶ 13-20.  These allegations do not establish standing because a legislator has no legally cognizable interest in a district of his choice.  A legislator holds office "as trustee for his constituents, not as a prerogative of personal power."  *Raines*, 521 U.S. at 821; *accord Moore v. U.S. House of Representatives*, 733 F.2d 946, 959 (D.C. Cir. 1984) (Scalia, J., concurring in the result) ("Whatever the realities of private ambition and vainglory may be," a legislator has no "judicially cognizable private interest" in his office.).

The Congressional Plaintiffs' allegations boil down to a complaint that they would prefer to run for reelection in a district more favorable to them.  That preference simply does not create a legally protected interest in such a district.  *Cf. Wittman v. Personhuballah*, 136 S. Ct. 1732, 1737 (2016) (expressing deep skepticism regarding whether such an injury is cognizable, but declining to issue a definitive holding on the issue); *Arizona Indep. Redistricting Comm'n*, 135 S. Ct. at 2677 (It is a "core principle of republican government . . . that the voters should choose their representatives, not the other way around." (internal quotation marks omitted)).  And even if the Congressional Plaintiffs' claimed injury is cognizable,

---

[6] Two plaintiffs allege that constituents' requests for assistance will be delayed if a new Congressperson represents them after the 2018 election.  Compl. ¶¶ 14, 17.  Even assuming such delay is a concrete injury, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

it is too speculative to support standing because the alleged harms to their candidacies are, at this point, purely conjectural. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (alleged injury cannot be "conjectural" or "hypothetical" (internal quotation marks omitted)).

The Congressional Plaintiffs lack standing to raise Count II for an additional reason: They have not alleged an injury that is "fairly . . . trace[able]" to the deadline in the January 22 Order. *See id.* ("[T]here must be a causal connection between the injury and the conduct complained of."). On their allegations, *any* change to their districts would have harmed them. But Count II relates to *who* should have made those changes (as it argues the General Assembly was entitled to more time to do so) not *whether* changes should have been made. The Congressional Plaintiffs cannot claim that they face any particular injury as a result of which entity makes the changes to the congressional districts, and so they lack standing to bring a challenge predicated on the assertion that the changes were made by the wrong body. *See Finkelman v. Nat'l Football League*, 810 F.3d 187, 196 (3d Cir. 2016) (holding plaintiffs lacked standing due to an analogous "causation problem" where market demand that existed before the seller's challenged actions caused their injury).

**III. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE ELECTIONS CLAUSE.**

Even if this Court could reach the merits of Plaintiffs' claims, it would still need to dismiss. Neither of Plaintiffs' counts states a cognizable claim for relief under the Elections Clause.

**A. The Pennsylvania Supreme Court Did Not Usurp Legislative Authority.**

Plaintiffs first claim that "the Pennsylvania Supreme Court has usurped authority the Elections Clause expressly and exclusively delegates to Pennsylvania's Legislature" "by engrafting . . . mandatory criteria found nowhere within Pennsylvania's Constitution." PI Mot. 6. This amounts to nothing more than a claim that the Pennsylvania Supreme Court has incorrectly interpreted the Pennsylvania Constitution. Neither the Elections Clause nor any other federal law permits a federal court to consider that claim.

It is worth noting at the outset what the Plaintiffs are *not* contesting. Plaintiffs do *not* claim that the Pennsylvania Constitution is inapplicable to redistricting laws such as the 2011 Act. *See* Pls.' Intv. Opp., Dkt. 31, at 3. Nor can they—that argument is squarely foreclosed by the Supreme Court's holding that "[n]othing in th[e Elections] Clause instructs, nor has this Court ever held, that a state legislature may prescribe regulations on the time, place, and manner of holding federal elections *in defiance of provisions of the State's constitution*."

*Arizona Indep. Redistricting Comm'n*, 135 S. Ct. at 2673 (emphasis added).

Plaintiffs likewise do not contest that the Pennsylvania Supreme Court has the

remedial authority to draw a congressional district map. *See* Pls.' Intv. Opp.,

Dkt. 31, at 3-4. Once again, that authority is well-established under both federal

and Pennsylvania law. *See Growe*, 507 U.S. at 33; *Mellow v. Mitchell*, 607 A.2d

204, 205 (Pa. 1992).

All plaintiffs are left with is the notion that *this* particular interpretation of

the Pennsylvania Constitution is so "rigid" and "formulaic" that it must really be

"legislative" in nature. PI Mot. 6-7. That is clearly wrong: A court engaged in

constitutional interpretation does not engage in "legislation" simply because the

precise rule of law in a particular case does not appear in the document's text.

Indeed, deriving specific doctrines from open-textured provisions is the basic task

of constitutional adjudication. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316,

406-407 (1819). The "nature" of a constitution is "that only its great outlines

should be marked, its important objects designated, and the minor ingredients

which compose those objects, be deduced from the nature of the objects

themselves." *Id.* at 407. Constitutional decisions of all stripes employ a similar

methodology. *See, e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 557 (1964) (deriving the one-person, one-vote principle from the Equal Protection Clause).[7]

What Plaintiffs really seek, then, is for this Court to overrule the Pennsylvania Supreme Court's interpretation of the Pennsylvania Constitution. *See* PI Mot. 8. Indeed, Plaintiffs recognize as much, and concede that the review of state court interpretations of state law is "ordinarily . . . beyond this Court's purview." *Id.* "Ordinarily" is a considerable understatement: "It is fundamental" to our federal system "that state courts be left free and unfettered by [federal courts] in interpreting their state constitutions." *Powell*, 559 U.S. at 56 (internal quotation marks omitted). For that reason, the Supreme Court has long held that federal courts cannot review whether a state court has correctly interpreted the laws of that state. *See Murdock v. City of Memphis*, 87 U.S. (20 Wall.) 590, 626, 633 (1874). And it has made clear that the rule applies in Elections Clause cases as surely as it applies everywhere else: In cases raising Election Clause challenges, the Supreme Court has repeatedly deferred to the state supreme courts' interpretations of state constitutional provisions. *See Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565, 568 (1916) (finding it "obvious" that the Ohio Supreme

_____

[7] Plaintiffs claim that *Agre v. Wolf* supports their notion that overly specific state constitutional decisions amount to legislation. It does not. That case simply addressed whether the Elections Clause contained an internal proscription of political gerrymandering; it did not consider the relationship between state constitutions and the Elections Clause. No. 17-4392, 2018 WL 351603, at *2 (E.D. Pa. Jan. 10, 2018), *appeal docketed*, No. 18-1135 (3d Cir. Jan. 24, 2018).

Court's interpretation of the Ohio constitution was "conclusive on that subject");
*see also Smiley v. Holm*, 285 U.S. 355, 363-364 (1932) (treating the Minnesota
Supreme Court's understanding of the requirements of the Minnesota constitution
as dispositive on that issue).

The only authority that the Plaintiffs can muster for the notion that the
Elections Clause permits federal courts to review state court interpretations of state
constitutions is a concurring opinion in *Bush v. Gore*, 531 U.S. 98 (2000)
(Rehnquist, C.J.). That concurrence is obviously not controlling, especially in a
case where even the *majority* opinion discouraged future litigants from using it as
precedent. *Id.* at 109. Moreover, the concurrence did not address the
congressional Elections Clause at all. It addressed a different provision of the
United States Constitution regarding the presidential electoral process. The
Supreme Court has stated several times that the requirements of the two clauses
should *not* be treated identically. *See, e.g.*, *Arizona Indep. Redistricting Comm'n*,
135 S. Ct. at 2668 (emphasizing the important distinctions between the two
constitutional provisions); *Smiley*, 285 U.S. at 365-366 (same). Plaintiffs are
therefore left with no authority for their suggestion that this Court is empowered to
revisit the Pennsylvania Supreme Court's interpretation of Pennsylvania law.

**B.    The Pennsylvania Supreme Court's Remedial Order Did Not Otherwise Violate the Elections Clause.**

Perhaps recognizing the weakness of their usurpation argument, Plaintiffs offer up a second theory that the remedial order violated the Elections Clause because the court did not give the legislature an adequate opportunity to redraw the map. PI Mot. 9-10. But Plaintiffs offer *no* support for their assertion that the remedial process ordered by the Pennsylvania Supreme Court violates the Elections Clause or any other principle of federal law.

For one thing, Plaintiffs cannot point to *any* precedent establishing that the Elections Clause permits federal courts to police the process by which a state court remedies an unlawful or unconstitutional districting plan. Instead, Plaintiffs seek to rely on a series of inapplicable cases in which the U.S. Supreme Court has offered guidance on how federal courts should go about remedying defects in an unlawful or unconstitutional map. Thus, the Supreme Court has suggested that, *as a matter of remedial equity*, a state legislature "should be given the opportunity to make its own redistricting decisions" if "the State chooses to take the opportunity" and "so long as [it] is practically possible," *Lawyer v. Dep't of Justice*, 521 U.S. 567, 576 (1997). But it has *never* suggested that the Elections Clause is the source of this guidance, still less has it suggested that a state court risks violating that Clause if it fails to provide some set amount of time for a legislature to attempt to redraw a map. To the contrary, the Court has taken pains to emphasize courts are

not inhibited from "providing remedies fully adequate to redress constitutional violations which have been adjudicated and must be rectified." *White v. Weiser*, 412 U.S. 783, 797 (1973); *accord League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 416 (2006) (Kennedy, J.) ("Judicial respect for legislative plans, however, cannot justify legislative reliance on improper criteria for districting determinations.").

Moreover, even if these cases could somehow be twisted to establish a federal requirement for state courts fashioning redistricting remedies, the relief ordered by the Pennsylvania Supreme Court plainly comports with that requirement because the Supreme Court has accepted court-drawn maps following similarly constrained timelines in the past. *See, e.g.*, *Loeper v. Mitchell*, 506 U.S. 828 (1992) (denying certiorari in *Mellow*, 607 A.2d at 205, where court gave legislature from January 30, 1992, to February 11, 1992); *see also Larios v. Cox*, 305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004) (legislature given nineteen days to remedy one-person, one-vote violation), *aff'd* 542 U.S. 947 (2004); *Abrams v. Johnson*, 521 U.S. 74, 82 (1997) (legislature given less than two months); *cf. Vieth v. Jubelirer*, 541 U.S. 267, 273 (2004) (noting that Pennsylvania *met* a three-week court ordered deadline to cure a finding of malapportionment).

The "reality" is that "States must often redistrict in the most exigent circumstances." *Growe*, 507 U.S. at 35. And here, the Pennsylvania Supreme

Court satisfied any federal obligation to give the legislature an opportunity to remedy the state constitutional violation given the practical necessities in this case. Its January 22 order gave the legislature eighteen days to enact a new plan. *See* Compl. Ex. B at 2. This afforded the General Assembly time to respond while ensuring "that the May 15, 2018 primary election [would] take[ ] place as scheduled." *Id.* at 3.

Plaintiffs' arguments that this timeline was inadequate rest on three flawed premises. Even accepting the facts as pleaded, none withstand scrutiny. First, Plaintiffs claim that they were given "inadequate time" to enact *any* law under the state Constitution. But, as Plaintiffs implicitly concede, for this argument to work, they must use February 7 as the starting date, rather than January 22. *See* PI Mot. 11. Eighteen days would be more than adequate to accommodate the procedural requirements they have identified. *See id.* at 10-11 (identifying "six days" as "the [minimum] number of days required"). Indeed, the legislature adopted the 2011 map in less time. *See Agre*, 2018 WL 351603 (Baylson, J., dissenting).

To justify their February 7 start date, Plaintiffs introduce their second flawed premise: that the January 22 order did not give the legislature sufficient guidance to enact a compliant map. PI Mot. 11-12. But that claim is flatly contradicted by the text of the Pennsylvania Supreme Court's orders. The court provided specific

instructions about how "to comply with [its] Order" on January 22. Compl. Ex. B at 3. And to dispel any doubt about the effect of the February 7 opinion on the January 22 order, the Court "emphasize[d] that . . . nothing in [the February 7] Opinion [wa]s intended to conflict with, or in any way alter, the mandate set forth in [the January 22] Order." Compl. Ex. F at 4. Indeed, Plaintiffs' claim that the January 22 guidance was too scant rings especially hollow in light of their own argument elsewhere that the January 22 criteria were "rigid," "formulaic criteria of the type typically found in a legislatively enacted elections code." PI Mot. 6-7. And, if they truly believed that the February 7 opinion introduced new requirements that impeded their ability to meet the Court's deadline, they could have asked the Pennsylvania Supreme Court for an extension of time on that basis, instead of waiting to bring their complaint to this Court.

Finally, Plaintiffs argue that the January 22 order required the legislature to depart from certain lawmaking procedures described elsewhere in the Pennsylvania Constitution. *Id.* at 14-16. These arguments about what the Pennsylvania Constitution requires are beyond this Court's jurisdiction. *See supra* pp. 22-23; *Murdock*, 87 U.S. at 626, 633. But they are also based on a misreading of the Pennsylvania Constitution and the Pennsylvania Supreme Court's orders. The Pennsylvania Constitution gives the governor a *maximum* of ten days to consider vetoing proposed legislation before certain consequences ensue, but does not also

set a *minimum* number of days.  *See* Pa. Const. art. IV, § 15.  As for Plaintiffs'
claims that the legislature could not override a veto or create a record of the
legislative process, nothing in the Supreme Court's order is inconsistent with the
notion that the legislature would have been free to follow its ordinary procedures
for overriding vetoes and recording legislative activity in the legislative journals.[8]
*See* Compl. Ex. B.

In short, Plaintiffs' assertion that the Elections Clause permits federal courts
to police the remedial process ordered by a state court is wholly untethered to
precedent and contrary to our federalist system.  And, even if this Court were
permitted to second guess the remedy ordered by the Pennsylvania Supreme Court,
Plaintiffs still could not prevail because it is well in line with the remedies
approved by the Supreme Court in the past.  Plaintiffs' arguments that eighteen
days was too short depend on mischaracterizations of Pennsylvania law and the
Pennsylvania Supreme Court's orders.  Count II should be dismissed.

---

[8] Because the legislature made no attempt to pass a compliant plan in the relevant
window, any suggestion that the court *would* have disregarded a plan passed by a
veto override is purely counterfactual speculation.

# CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court

dismiss Plaintiffs' Complaint in its entirety.

Dated: March 2, 2018

Thomas P. Howell
Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
Tel: (717) 783-6563
Fax: (717) 787-1788
thowell@pa.gov

Timothy E. Gates
Kathleen M. Kotula
Pennsylvania Department of State
Office of Chief Counsel
306 North Office Building
Harrisburg, PA 17120
Tel: (717) 783-0736
tgates@pa.gov
kkotula@pa.gov

/s/ Mark A. Aronchick
Mark A. Aronchick
Michele D. Hangley
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 568-6200
Fax: (215) 568-0300
maa@hangley.com
mdh@hangley.com

Neal Kumar Katyal *(admitted pro hac vice)*
Colleen Roh Sinzdak *(admitted pro hac vice)*
Reedy C. Swanson *(admitted pro hac vice)*
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
Tel: (202) 637-5600
neal.katyal@hoganlovells.com

Thomas P. Schmidt *(admitted pro hac vice)*
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022

Sara Solow *(admitted pro hac vice)*
Hogan Lovells US LLP
1735 Market St., 23rd Floor
Philadelphia, PA 19103

*Attorneys for Acting Secretary Torres and
Commissioner Marks*

## **CERTIFICATE OF CONCURRENCE OR NON-CONCURRENCE**

I, Mark A. Aronchick, hereby certify, pursuant to Local Rule 7.1, that concurrence in the foregoing motion was sought from plaintiffs, through their counsel, and that no concurrence was granted.  I further certify that Intervenors concur in the foregoing motion.


Dated:  March 2, 2018                    */s/ Mark A. Aronchick*_____
                                         Mark A. Aronchick

## <u>CERTIFICATE OF WORD COUNT</u>

I, Mark A. Aronchick, hereby certify pursuant to Local Civil Rule 7.8(b)(2)

that the text of the foregoing Memorandum of Law in Support of Motion to

Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) contains

6572 words as calculated by the word-count function of Microsoft Word, which is

within the limit of 7500 words granted by the Court in response to Defendants'

Motion for Leave to File Brief in Excess of the Word Limit.

Dated:  March 2, 2018              */s/ Mark A. Aronchick*
                                   Mark A. Aronchick