# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACOB CORMAN, in his official
capacity as Majority Leader of the
Pennsylvania Senate, MICHAEL
FOLMER, in his official capacity as
Chairman of the Pennsylvania Senate
State Government Committee, LOU
BARLETTA, RYAN COSTELLO,
MIKE KELLY, TOM MARINO,
SCOTT PERRY, KEITH ROTHFUS,
LLOYD SMUCKER, and GLENN
THOMPSON,

      Plaintiffs,

  v.

ROBERT TORRES, in his official
capacity as Acting Secretary of the
Commonwealth; JONATHAN M.
MARKS, in his official capacity as
Commissioner of the Bureau of
Commissions, Elections, and Legislation,

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION

No. 1:18-cv-00443-CCC-KAJ-JBS

Three-Judge Panel Pursuant to 28
U.S.C. § 2284(a)

The Honorable Kent Jordan
The Honorable Christopher Conner
The Honorable Jerome Simandle

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................2

I.     PLAINTIFFS MAY NOT USE A FEDERAL SUIT TO
COLLATERALLY ATTACK THE PENNSYLVANIA
SUPREME COURT'S JUDGMENT...................................................2

    A.    This Court Should Dismiss The Suit Under The
*Rooker-Feldman* Doctrine .........................................................2

    B.    This Court Should Abstain Under *Colorado River* ...................6

    C.    This Case Should Be Dismissed Because Plaintiffs Are
Precluded From Relitigating The Issues Resolved In The
State Proceedings .........................................................................9

II.    PLAINTIFFS LACK STANDING ...................................................10

III.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER
THE ELECTIONS CLAUSE............................................................11

    A.    The Pennsylvania Supreme Court Did Not Usurp
Legislative Authority .................................................................12

    B.    The Pennsylvania Supreme Court's Remedial Order Did
Not Otherwise Violate the Elections Clause ............................15

    C.    Plaintiffs' Have Not Properly Pleaded Any Entitlement
To More Time. ...........................................................................20

CONCLUSION ................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agre v. Wolf*,
  No. 17-4392, 2018 WL 351603 (E.D. Pa. Jan. 10, 2018) ..................................17

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*,
  135 S. Ct. 2652 (2015)................................................................................12, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................18, 20

*Branch v. Smith*,
  538 U.S. 254 ...................................................................................................16

*Brown v. Bd. of Educ.*,
  347 U.S. 483 (1954)..........................................................................................14

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988)............................................................................................5

*Catroppa v. Carlton*,
  998 A.2d 643 (Pa. Super. Ct. 2010)...................................................................9

*Citizens United v. FEC*,
  558 U.S. 310 (2010)..........................................................................................14

*City of Erie v. Pap's A.M.*,
  529 U.S. 277 (2000)............................................................................................5

*City News & Novelty, Inc. v. City of Waukesha*,
  531 U.S. 278 (2001)............................................................................................5

*Coleman v. Miller*,
  307 U.S. 433 (1939)..........................................................................................10

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976).......................................................................................6, 7

*Cook v. Gralike*,
  531 U.S. 510 (2001)..........................................................................................15

*Ohio ex rel. Davis v. Hildebrant*,
    241 U.S. 565 (1916)..........................................................................................12

*Dennis v. Luis*,
    741 F.2d 628 (3d Cir. 1984) .............................................................................10

*Duncan v. Louisiana*,
    391 U.S. 145 (1968)..........................................................................................14

*Erfer v. Commonwealth*,
    794 A.2d 325 (Pa. 2002)...................................................................................14

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,
    615 F.3d 159 (3d Cir. 2010) ...............................................................................2

*Hoblock v. Albany Cty. Bd. of Elections*,
    422 F.3d 77 (2d Cir. 2005) .................................................................................4

*Kremer v. Chem. Constr. Corp.*,
    456 U.S. 461 (1982)..........................................................................................10

*Lance v. Dennis*,
    546 U.S. 459 (2006)...............................................................................2, 3, 4, 5

*Lawrence v. Texas*,
    539 U.S. 558 (2003)..........................................................................................14

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..........................................................................................11

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)..........................................................................................13

*McCulloch v. Maryland*,
    17 U.S. (4 Wheat.) 316 (1819) .........................................................................13

*Miranda v. Arizona*,
    384 U.S. 436 (1966)..........................................................................................13

*Moore v. U.S. House of Representatives*,
    733 F.2d 946 (D.C. Cir. 1984)..........................................................................10

*Pennzoil Co. v. Texaco,*
  481 U.S. 1 (1987)....................................................................................8

*Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*
  *Police Dep't,*
  973 F.2d 169 (3d Cir. 1992) ..................................................................2

*Raines v. Byrd,*
  521 U.S. 811 (1997)................................................................................10

*Reynolds v. Sims,*
  377 U.S. 533 (1964)................................................................................13

*Smiley v. Holm,*
  285 U.S. 355 (1932)................................................................................12

*Sprint Commc'ns, Inc. v. Jacobs,*
  134 S. Ct. 584 (2013)..............................................................................8

*St. George Warehouse, Inc. v. NLRB,*
  394 F. App'x 902 (3d Cir. 2010) ..........................................................8

*U.S. Term Limits, Inc. v. Thornton,*
  514 U.S. 779 (1995)................................................................................15

*United Pub. Workers of Am. (C.I.O.) v. Mitchell,*
  330 U.S. 75 (1947)..................................................................................18

*Walker v. Horn,*
  385 F.3d 321 (3d Cir. 2004) ..................................................................2

## Other Authorities

U.S. Const. art. I, § 4.................................................................................5

# INTRODUCTION

Under the guise of the Elections Clause, Plaintiffs would have this Court step into the role of superintendent of state courts. They ask this Court to overlook multiple doctrines—jurisdictional and otherwise—that the Supreme Court has crafted *precisely* to prevent federal courts from stepping into that role. Then they ask this Court to get into the business of deciding whether a state court has identified a state constitutional right that is sufficiently "explicit" in the text of that state's constitution. And they ask this Court to split hairs over a state court's exercise of its remedial powers—concerning itself with *exactly* how many days the federal Constitution supposedly requires a state court to give a legislature to remedy a constitutional wrong.

Plaintiffs do not and cannot cite any case where a federal court has engaged in this kind of micromanagement of state courts. With good reason: Doing so would go against federalism principles that are deeply embedded in American law. That is why the Pennsylvania Supreme Court rejected identical Elections Clause challenges when they were pressed in the state court proceedings, and presumably why Justice Alito denied the request of Plaintiffs' colleagues for an emergency stay on precisely these claims over a month ago, allowing the Pennsylvania court's remedial plan to proceed. The result here should be the same. The Complaint should be dismissed.

**ARGUMENT**

I.     **PLAINTIFFS MAY NOT USE A FEDERAL SUIT TO COLLATERALLY ATTACK THE PENNSYLVANIA SUPREME COURT'S JUDGMENT.**

A.     **This Court Should Dismiss The Suit Under The *Rooker-Feldman* Doctrine.**

The *Rooker-Feldman* doctrine embodies the "fundamental principle" that "a federal district court may not sit as an appellate court to adjudicate appeals of state court proceedings." *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J. Police Dep't*, 973 F.2d 169, 178-179 (3d Cir. 1992). The doctrine thus "prohibits District Courts from adjudicating actions in which the relief requested requires determining whether the state court's decision is wrong or voiding the state court's ruling." *Walker v. Horn*, 385 F.3d 321, 329 (3d Cir. 2004) (internal quotation marks omitted). That is precisely what Plaintiffs would have this Court do, as their own briefs make abundantly clear.

Plaintiffs only contest the first and fourth of *Rooker-Feldman*'s requirements—that the parties be the same or closely related, and that the federal suit must seek to "review and reject the state judgments." *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). On the first point, Plaintiffs argue that the Supreme Court's decision in *Lance v. Dennis*, 546 U.S. 459 (2006), "ends the inquiry." MTD Opp. 14. It does not. *Lance* held that *Rooker-Feldman* does not bar a case merely because the parties to the state and

federal actions would be in privity for preclusion purposes. Defendants have never argued to the contrary. Rather, they have argued that the particular relationships between the Plaintiffs here and the parties to the state court litigation bring this case within the ambit of *Rooker-Feldman*.

Having confined their brief to attacking a strawman, Plaintiffs have remarkably little to say about Defendants' actual arguments. While they acknowledge (at 14) that the Supreme Court has left open whether *Rooker-Feldman* may apply in certain "circumstances" even though the federal plaintiff was "not named in an earlier state proceeding," *Lance*, 546 U.S. at 466 n.2, they fail to explain why this suit should not qualify. First of all, both the General Assembly and the State Senate President Pro Tempore were parties to the state court litigation; State Plaintiffs therefore participated in the state court litigation, and indeed were members of the very body subject to the state courts' remedial orders. *See id.*

Moreover, the named parties to the prior state proceeding have made clear, in public statements, that this suit is an outgrowth of the state case. MTD 10-11. Plaintiffs respond (at 15) that "statements that 'House and Senate Republican leadership will be initiating action' in federal court surely does not equate with Senator Scarnati or Speaker Turzai doing so." Whether or not they "d[id] so" in name, the statements demonstrate that they were the moving parties behind this

suit. And, were there any doubt, Plaintiffs' briefs erase it. The briefs duplicate passages from the most recent stay application filed with the United States Supreme Court *wholesale*, providing vivid evidence that this litigation is intended to open up a second forum for the state court losers to appeal a ruling they dislike. *Compare, e.g.*, MTD Opp. 53-56, with Emergency Application for a Stay Pending Resolution of Appeal to this Court, at 16-17, in No. 17A909 (U.S. Feb. 27, 2018).

Further, Plaintiffs' reply brief in support of a preliminary injunction all but acknowledges that the parties to the two actions are functionally identical: Plaintiffs claim that "the last, peaceable, uncontested status *of the parties*" was *before* the state court litigation. PI Reply 30 (emphasis added).[1] That can only be true, of course, if the parties to the state and federal actions are the same. To claim otherwise for jurisdictional purposes would be to reduce *Rooker-Feldman* to a shell game.

The *Rooker-Feldman* doctrine simply does not permit Plaintiffs to overturn a state court judgment in federal court through a nominal substitution of parties of this kind. *See Lance*, 546 U.S. at 466 n.2; *see Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 90 (2d Cir. 2005). And *Lance* does not suggest otherwise. There was nothing resembling this sort of collusion or jurisdictional manipulation

---

[1] Where Plaintiffs' statement is telling as to the real parties behind this suit, their argument regarding the relevance of "the last, peaceable, uncontested status" is legally meritless, as Defendants explain in their Sur-Reply Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction.

in *Lance*, and the Supreme Court has made it patently clear that federal courts should not allow their jurisdiction to be determined by such ploys. *Cf. City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 (2001) (Court does not "reward an arguable manipulation of [its] jurisdiction"); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000) (noting the Court's "interest in preventing litigants from attempting to manipulate [its] jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to [exercise jurisdiction].").

On the second point, Plaintiffs claim (at 15) they are not seeking to "appeal" the Pennsylvania Supreme Court's judgment. In particular, they argue (at 15) that the Pennsylvania Supreme Court decision "was about whether the 2011 Plan violated Pennsylvania's Constitution," while this case is about the "Elections Clause." That argument simply does not hold weight. The Elections Clause issue was raised and briefed throughout the state proceedings and actually decided by the Pennsylvania Supreme Court. In particular, Plaintiffs' counterparts in the state action argued to the Commonwealth Court: "Because the U.S. Constitution vests Pennsylvania's legislature with the primary duty of drawing Congressional districts, see U.S. Const. art. I, § 4, this Court cannot impose on the legislature any conditions or criteria that the legislature itself has not adopted." Legislative

Respondents' Proposed Findings of Fact and Conclusions of Law ¶ 500, in *League of Women Voters of Pa. v. Commonwealth*, No. 261 MD 2017 (Commw. Ct. Dec. 18, 2017).  One of their three questions presented to the Pennsylvania Supreme Court was whether holding the 2011 map unconstitutional would "comport[] with the U.S. Constitution's Elections Clause's delegation of redistricting authority to legislative processes."  Brief of Respondents/Appellees at 6, in No. 159 MM 2017 (Pa. Jan. 10, 2018).  And the Pennsylvania Supreme Court addressed the issue thoroughly.  Compl. Ex. F at 131-37 & n.79; Compl. Ex. H at 5-8.  There is thus no question that Plaintiffs are seeking to overturn an issue actually briefed and decided in the Pennsylvania Supreme Court.

### B.    This Court Should Abstain Under *Colorado River*.

Plaintiffs argue (at 42) that *Colorado River* abstention is inapplicable because "neither the parties nor the claims are identical to those in the *LOWV* Action."  That is wrong on the law and the facts.  On the law, *Colorado River* abstention, as Plaintiffs themselves concede (at 42), requires only "'*substantially similar* parties and claims' " (emphases added) (quoting *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 (3d Cir. 2017)).  A party cannot evade *Colorado River* through nominal party changes or other manipulative evasions any more than it can evade *Rooker-Feldman*.  And for the reasons given above in relation to

*Rooker-Feldman*, the parties and claims in this litigation are "substantially similar." *Id*.; *see supra* p.4.

Plaintiffs next suggest (at 43) that the possibility of a petition for certiorari in the U.S. Supreme Court is "irrelevant" because "*Colorado River* abstention applies only when there is a parallel *state* court action." But there *is* a pending state court action; the Supreme Court petition would only mark the conclusion of that action. And the core of *Colorado River*, after all, is "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). It would certainly serve "[w]ise judicial administration" not to have this Court and the Supreme Court simultaneously considering the same issues. *Id*. And it would undermine "comprehensive disposition of litigation" for this Court to insert itself into the state dispute, risking not only duplicative proceedings but inconsistent rulings. *Id*.

Plaintiffs also cursorily argue that the various *Colorado River* factors are not met. They opine (at 44) that this forum is convenient because their claims are federal and Defendants "are located in Harrisburg." But the fact remains that the root issues in this suit—the constitutionality of the 2011 map, the equities and practicalities of election timetables, and the scope of state courts' remedial

discretion—are all better suited to adjudication in state courts. They also say (at 43-44) that the danger of "piecemeal litigation" should be disregarded, because it is "speculative" that the Supreme Court will grant certiorari. But they have trumpeted elsewhere that there is "a high likelihood that th[e] [Supreme] Court will grant certiorari and reverse," which would result in this Court and the Supreme Court deciding identical issues at the same time. Emergency Application for a Stay Pending Resolution of Appeal to this Court, at 3, in No. 17A795 (U.S. Jan. 26, 2018). Finally, Plaintiffs claim (at 44) that the sequencing and forum-shopping factors do not weigh in favor of abstention because their Elections Clause claims "were not, and could not have been, adjudicated in the state court in the first instance." But they *were* in fact raised and decided in the state court proceedings, and the precise Elections Clause claims presented here are currently pending in the Supreme Court. *See supra* pp. 4-6.[2]

---

[2] As Intervenors explain, abstention is also warranted under *Pennzoil Co. v. Texaco*, 481 U.S. 1 (1987), because this case implicates "the state court['s] ability to perform [its] judicial functions" by enforcing its judgment. *See Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013). At a bare minimum, this Court should stay this case given that the precise legal issue is currently pending before the Supreme Court. *See St. George Warehouse, Inc. v. NLRB*, 394 F. App'x 902, 903 (3d Cir. 2010) (case held while same issue was pending before Supreme Court).

**C.    This Case Should Be Dismissed Because Plaintiffs Are Precluded From Relitigating The Issues Resolved In The State Proceedings.**

As Intervenors explain more fully, Plaintiffs' claims are barred by issue and claim preclusion, and nothing in Plaintiffs' grab bag of counterarguments has any merit.  Plaintiffs argue first that the Elections Clause issue was not decided by the Pennsylvania Supreme Court.  That is simply wrong.  The issue was identified by the parties in privity with Plaintiffs' as one of the three questions presented in the Pennsylvania Supreme Court, and then actually decided by that Court.  *See supra pp. 3-6.*  Plaintiffs then contend that they are not in privity with the parties to the state action.  "Privity" under Pennsylvania law means "'such an identification of interest of one person with another as to represent the same legal right.'"  *Catroppa v. Carlton*, 998 A.2d 643, 647 (Pa. Super. Ct. 2010) (quoting *Ammon v. McCloskey*, 655 A.2d 549, 554 (Pa. Super. Ct. 1995)).  And because the relationship between the Plaintiffs and their state court surrogates is sufficient even to meet the requirements of *Rooker Feldman*, *see supra* pp. 3-5, that relationship is certainly sufficient to satisfy the lower standard necessary to show privity for preclusion purposes.

Plaintiffs also claim (at 24) that preclusion should not apply because the judgment in question is "constitutionally infirm" under the Elections Clause (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461 (1982)).  But *Kremer*'s exception to preclusion is narrow; to be entitled to preclusive effect, "state

proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." 456 U.S. at 481. Until this very brief, Plaintiffs have not even attempted the quixotic argument that the Pennsylvania Supreme Court's decision was below that low bar.

## II.     PLAINTIFFS LACK STANDING.

This suit should also be dismissed for lack of standing, as Intervenors explain more fully. State Plaintiffs contend (at 29) that they suffered two injuries: They "were deprived of (1) their legislative authority to apportion congressional districts; and (2) the federally-mandated 'adequate opportunity' to craft a remedial plan." Neither of those harms is cognizable, because they "damage[] all Members of [the Legislature] equally." *Raines v. Byrd*, 521 U.S. 811, 821 (1997). Plaintiffs thus do not have the requisite "personal stake." *Id*. at 830. As for the Congressional Plaintiffs, they do not even acknowledge—let alone rebut—the basic principle that a legislator has no "judicially cognizable private interest" in his office. *Moore v. U.S. House of Representatives*, 733 F.2d 946, 959 (D.C. Cir. 1984) (Scalia, J., concurring in the judgment); *see Raines*, 521 U.S. at 821. Plaintiffs' only real response to this argument is to cite precedent that predates *Raines* and plainly cannot supersede its straightforward command. MTD Opp. 29-32 (relying on *Coleman v. Miller*, 307 U.S. 433 (1939) and *Dennis v. Luis*, 741 F.2d 628 (3d Cir. 1984)).

Congressional Plaintiffs also fail utterly to explain how there is a "causal connection between the[ir] injur[ies] and the conduct complained of" in Count II. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In particular, Count II only concerns *who* should have made changes to the electoral map, not whether such changes were necessary. But Congressional Plaintiffs' harms all flow from the *fact* of change, not who made it. *See* MTD 19. Plaintiffs' only response (at 38) is that "[n]o case requires [them] to speculate at the pleading stage . . . to what extent they might have been harmed if a different map had been . . . adopted." To the contrary: It is fundamental that the "party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan*, 504 U.S. at 561. At the pleading stage, that means Plaintiffs must show standing through "factual allegations." *Id.* And the Complaint is devoid of any allegation that would establish that the Congressional Plaintiffs would not face the same alleged obstacles from a new map issued by the General Assembly as they do from the new map issued by the Pennsylvania Supreme Court.

## III. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE ELECTIONS CLAUSE.

Over 20,000 words later, Plaintiffs *still* have not produced a single case where the Supreme Court—or any other federal court—exercised supervisory power over a state court's interpretation of its own law or remedial authority under the auspices of the Elections Clause. That is a clear sign that the Clause provides

no authority for such an exercise.  And this case provides no occasion for this Court to create one.

### A. The Pennsylvania Supreme Court Did Not Usurp Legislative Authority.

Precedent makes clear that the limits of a state's constitution apply fully in the context of redistricting. *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2673 (2015) ("[n]othing in [the Elections] Clause instructs, nor has this Court ever held, that a state legislature may prescribe regulations on the time, place, and manner of holding federal elections *in defiance of provisions of the State's constitution*" (emphasis added); *see id.* at 2687 (Roberts, C.J., dissenting) (explaining that "when [the state legislature] prescribes election regulations, [it] may be required to do so within the ordinary lawmaking process").  Precedent also makes clear that state courts are the ultimate expositors of state constitutional provisions in the redistricting context:  Over a century ago, the Supreme Court said that it was "obvious" that a state court's interpretation of constitutional provisions applicable to redistricting was "conclusive on that subject." *Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565, 567-568 (1916); *see Smiley v. Holm*, 285 U.S. 355, 363-364 (1932) (likewise treating the Minnesota Supreme Court's understanding of the requirements of the Minnesota constitution as dispositive on that issue).

This precedent stands squarely in the way of Plaintiffs' effort to overturn the Pennsylvania Supreme Court's interpretation of the Free and Equal Elections Clause of the Pennsylvania Constitution. And so they are forced to make a novel argument: They claim (at 54-56) that in articulating certain benchmarks for neutral redistricting that derive from the Free and Equal Elections Clause, the Pennsylvania Supreme Court must have been legislating rather than interpreting the Pennsylvania Constitution. Thus, under Plaintiff's theory, a court legislates when it derives more specific requirements from an open textured constitutional provision.

Accepting that proposition would turn two centuries of judicial practice on its head. *See McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 406-407 (1819). Indeed, if the exercise of deducing constitutional doctrine from constitutional text were deemed "legislation from the bench," (MTD Opp. 56), then the U.S. Supreme Court would be guilty of judicial legislation in countless cases. *E.g.*, *Reynolds v. Sims*, 377 U.S. 533, 557 (1964) (deriving the one-person, one-vote principle); *see also Miranda v. Arizona*, 384 U.S. 436, 467-468 (1966) (deriving pre-arrest warning); *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (deriving requirement of notice and opportunity to be heard).[3]

---

[3] Plaintiffs' extensive argument (MTD Opp. 55-56) that the Pennsylvania Supreme Court's decision is atextual because the Pennsylvania Constitution elsewhere lists more specific redistricting criteria for state legislative districts is unavailing. This

The same is true for Plaintiffs' related proposition that the Pennsylvania Supreme Court's opinion must be deemed "legislation" because it purportedly runs contrary to a statement in a prior case suggesting that the Pennsylvania Constitution contains no "direct textual references to such neutral apportionment criteria." *Erfer v. Commonwealth*, 794 A.2d 325, 334 n.4 (Pa. 2002). This boils down to an assertion that a change in a court's constitutional interpretation amounts to impermissible legislation. Again, accepting that principle would turn the United States Supreme Court into a legislator many times over. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 365 (2010) (overruling *Austin v. Mich. Chamber of Commerce*, 494 U.S. 652 (1990)); *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (overruling *Bowers v. Hardwick*, 478 U.S. 186 (1986)); *Brown v. Bd. of Educ.*, 347 U.S. 483, 494-495 (1954) (overruling *Plessy v. Ferguson*, 163 U.S. 537 (1896)).

In any event, Plaintiffs' characterization of *Erfer* is simply wrong: The *Erfer* Court stated only that there was no "direct" textual bar on partisan gerrymandering. It certainly did not hold that the Free and Equal Elections Clause

kind of *expressio unius* argument is particularly weak in the context of constitutional interpretation. For example, strict application of this principle would eviscerate the entire federal doctrine of incorporation, the principal method by which the Bill of Rights is made applicable to the states. The premise of the incorporation doctrine is that provisions expressly made applicable to one entity— Congress—are in fact equally applicable to another—the states. *Duncan v. Louisiana*, 391 U.S. 145, 147-148 (1968).

had nothing to say about gerrymandering at all.  And this dispute about the proper interpretation of past Pennsylvania Supreme Court opinions merely illustrates how far Plaintiffs would like this Court to stray:  They would like federal courts to get into the business of reviewing state court opinions to decide exactly how closely they hew to the state court's precedent and how faithfully the state court has interpreted the state constitution's text.  Those tasks are self-evidently outside the purview of a federal court in our federalist system.

Plaintiffs' precedent does not suggest otherwise.  They rely primarily on *Arizona Independent Redistricting Commission*, which in fact establishes that state legislatures may *not* engage in redistricting "in defiance of provisions of the State's constitution." 135 S. Ct. at 2673.  And they bizarrely cite to *U.S. Term Limits, Inc. v. Thornton* , 514 U.S. 779, 835 (1995) and *Cook v. Gralike*, 531 U.S. 510, 524 (2001), two cases establishing limits on the type of state election regulations that may qualify as "time, place, and manner" restrictions.  None of these cases come close to establishing that a federal court may overturn a state court's interpretation of a state constitution under the guise of the Elections Clause.

### B.  The Pennsylvania Supreme Court's Remedial Order Did Not Otherwise Violate the Elections Clause.

Plaintiffs' efforts in Count II to target the court's remedial plan fare no better than their efforts on the merits of the court's state law determination.  Indeed, they devote hardly any effort to refuting the key premise of Defendants' argument:  that

the U.S. Supreme Court has only ever expressed concern about the timing of redistricting remedies as a matter of federal equitable principles, *not* as a dictate of the Elections Clause. *See* MTD 24. They dedicate a single footnote to refuting this point in their preliminary injunction reply brief. *See* PI Reply 9 n.2. And the *only* citation they offer, *Wise v. Lipscomb*, only proves Defendants' point: Over and over again, *Wise* indicates that it is describing remedial principles that apply to "*federal* courts." 437 U.S. 535, 539-542 (1978) (emphasis added). There is simply no indication that these equitable principles bind *state* courts, let alone that these principles somehow emanate from the Elections Clause. *See id.* Plaintiffs are simply avoiding the fact that they have not identified a *single* instance where a federal court has even expressed concern about a state court's remedial timeline, much less entered an injunction affording relief from such an order. In short, Plaintiffs' second Elections Clause argument represents a second invitation to become the first court to announce a rule allowing federal courts to oversee state court decisions with respect to state constitutional demands.[4]

---

[4] Plaintiffs also appear to argue that the Elections Clause *requires* a state court to leave in place an unlawful map when it invalidates that map too close to an election to permit the legislature an "adequate opportunity" to produce a new map of its own. But that proposition is squarely foreclosed by *Branch v. Smith*, 538 U.S. 254, 274-75 (2003) (plurality op.), which held that federal law permits state and federal courts to adopt their own maps in such circumstances. It is doubtful that the Supreme Court would have held that federal law permits what the U.S. Constitution forbids.

Even if this Court were remotely inclined to accept Plaintiffs' call to judicial activism, this would not be the case to do it. The time afforded the legislature here was adequate under any conceivable standard. Defendants' brief sets out numerous cases in which similar timelines have been accepted by federal courts. *See* Def. MTD 25.[5] And Plaintiffs themselves offer examples of timelines they deem "adequate" that are barely longer than the one the Pennsylvania Supreme Court provided here. *See* PI Reply 15 (citing with approval remedial windows of, for example, 34 and 41 days). In fact, before the Pennsylvania Supreme Court in this very case, Plaintiffs' surrogates asserted that "three weeks" would likely be sufficient. Hangley Decl. Ex. 1 at 103:19-104:2.

Moreover, in their protestations that it would be impossible for the General Assembly to have enacted a map on the relevant timeline, Plaintiffs fail to address two extremely salient details: First, the legislature *has* enacted a congressional apportionment plan on an even tighter timeline in the past. The very 2011 Plan that they now defend made its way through the legislature in just seven days. *See Agre v. Wolf*, No. 17-4392, 2018 WL 351603 (E.D. Pa. Jan. 10, 2018) (Baylson, J., dissenting). Second, the legislature had a possible map on February 9. Its

---

[5] Plaintiffs suggest these cases involved different facts. Of course that is true, but that simply emphasizes the difficult task in which Plaintiffs wish to embroil federal courts. Plaintiffs have offered no workable standard for what constitutes an "adequate opportunity." Nor have Plaintiffs yet explained why federal courts are better suited to the task than state courts, which have greater knowledge of the intricacies of the state political process and elections system.

representatives submitted it to the Pennsylvania Supreme Court on that day. But those sponsors made no effort to put that map through the legislative process, failing to even introduce it on the floor. Plaintiffs cannot protest impossibility when they did not even try.

Acknowledging the weakness of their arguments that the court's 18-day timeline was impossible, Plaintiffs devote most of their opposition to moving the goal posts, arguing that all the General Assembly really had was two days given the timing of the majority's opinion. *See* MTD Opp. 57-60. That effort fails as a matter of law, because the Pennsylvania court was crystal clear that "nothing in" its majority opinion "is intended to conflict with, or any way alter, the mandate" of its January 22 Order. Compl. Ex. F at 4. The court therefore explicitly stated that it would have accepted a legislative plan that complied with its January 22 mandate. *See id.* Plaintiffs make no effort at all to address this key statement, and their suggestions that the court might not have adhered to that principle are nothing more than speculation, which this Court need not credit even on a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs are not entitled to an advisory opinion about whether the court *would* have violated the Elections Clause *if* it had disregarded a duly enacted plan that complied with the January 22 criteria. *See United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947).

What's more, a closer examination of the supposedly "new" elements introduced by the majority opinion reveals that they were all either expressed in the January 22 order or simply represent the specific application of the principles in the January 22 order to the facts of the 2011 Plan. Plaintiffs claim to have been surprised that they could not subordinate "neutral" or "traditional criteria" to partisan considerations, MTD Opp. 59, but it is clear that the "criteria" in question were the very factors that the court identified in the January 22 order. And they claim not to have realized that certain numerical measures applied, *see id.*, but those numbers merely represent the application of the Supreme Court's principles to the facts of the 2011 Plan—facts that were readily available by consulting the Commonwealth Court's Findings of Fact.[6] And Plaintiffs' suggestion that they thought the Pennsylvania Supreme Court might have been asking them to violate federal law—by, for example, disregarding the Voting Rights Act—is simply preposterous. *See* MTD Opp. 58. Nothing in the Pennsylvania Supreme Court's opinion gave any indication that it was inviting Plaintiffs to ignore federal law.

Finally, Plaintiffs resort to the argument that the Pennsylvania Supreme Court ordered the General Assembly to go outside its regular lawmaking

---

[6] More broadly, Plaintiffs claim that the majority imposed a requirement of "proportional representation." Tellingly, they offer no citation to the majority's opinion for that proposition. What the Court actually said was that, while some *future* case might raise this question, the present case did not require them to decide it. *See* Compl. Ex. F at 124.

procedures. They also claim that the Defendants did not challenge this point. PI Reply 18. That is wrong. *See* MTD 27-28 (refuting precisely those arguments). It is the *Plaintiffs* who have not responded, simply repeating their mischaracterizations of the January 22 order and the Pennsylvania Constitution without actually engaging with Defendants' arguments that those interpretations are unreviewable issues of state law, and mistaken besides. *Compare id.*, *with* PI Reply 18-20.

### C. Plaintiffs' Have Not Properly Pleaded Any Entitlement To More Time.

For the very first time in their preliminary injunction reply brief, Plaintiffs suggest that the proper remedy from this Court would be to postpone the primary elections to give the legislature another crack at passing a compliant map. PI Reply 25. That request directly contradicts the prayer for relief in the complaint. *See* Compl. 40. And Plaintiffs did not plead any facts that would support an entitlement to such relief—for example, that it would be logistically or financially *possible* to reschedule the elections at this time. *See Twombly*, 550 U.S. at 555.[7]

_____

[7] Plaintiffs mistakenly rely on a suggestion by Defendants' counsel in the Pennsylvania Supreme Court that the court had the legal authority to reschedule primaries. *See* MTD Opp. 39-40. As Commissioner Marks has explained, that alternative would now be extremely burdensome or even impossible. *See* Def. PI Opp. 22. Moreover, the legislature conspicuously failed to ask the Pennsylvania Supreme Court for more time before February 19, Compl. Ex. J at 5, and their colleagues affirmatively *disclaimed* any desire to reschedule the primaries in the Pennsylvania Supreme Court, *see* Hangley Decl. Ex. 1 at 140:8-141:22.

Accordingly, the Complaint provides no basis for this Court to postpone the already-underway primary elections already underway.

## CONCLUSION

For the foregoing reasons, and those stated in the memorandum in support of Defendant's Motion to Dismiss, Defendants respectfully request that the Court dismiss Plaintiffs' complaint in its entirety.

Dated: March 8, 2018

Thomas P. Howell
Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA  17101
Tel: (717) 783-6563
Fax: (717) 787-1788
thowell@pa.gov

Timothy E. Gates
Kathleen M. Kotula
Pennsylvania Department of State
Office of Chief Counsel
306 North Office Building
Harrisburg, PA  17120
Tel: (717) 783-0736
tgates@pa.gov
kkotula@pa.gov

*/s/ Mark A. Aronchick*
Mark A. Aronchick
Michele D. Hangley
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 568-6200
Fax: (215) 568-0300
maa@hangley.com
mdh@hangley.com

Neal Kumar Katyal *(admitted pro hac vice)*
Colleen Roh Sinzdak *(admitted pro hac vice)*
Reedy C. Swanson *(admitted pro hac vice)*
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
Tel: (202) 637-5600
neal.katyal@hoganlovells.com

Thomas P. Schmidt *(admitted pro hac vice)*
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022

Sara Solow *(admitted pro hac vice)*
Hogan Lovells US LLP
1735 Market St., 23rd Floor
Philadelphia, PA 19103

*Attorneys for Acting Secretary Torres and
Commissioner Marks*

## <u>CERTIFICATE OF WORD COUNT</u>

I, Mark A. Aronchick, hereby certify pursuant to Local Civil Rule 7.8(b)(2)

that the text of the foregoing Defendants' Reply Memorandum in Support of

Motion to Dismiss contains 4,999 words as calculated by the word-count function

of Microsoft Word, which is within the limit of 5,000 words.

Dated:  March 8, 2018                              */s/ Mark A. Aronchick*
                                                      Mark A. Aronchick

## CERTIFICATE OF SERVICE

I, Mark A. Aronchick, certify that on March 8, 2018, a true and correct copy

of the foregoing Defendants' Reply Memorandum in Support of Motion to Dismiss

was electronically filed with the Court and served via the CM/ECF system which

will provide notice to all counsel and parties of record.

*/s/ Mark A. Aronchick*
Mark A. Aronchick